**Claude A. DOTSON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 1282S510.**

Supreme Court of Indiana.

May 24, 1984.

John M. Lyons, Lyons & Truitt, Valparaiso, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Burglary, a class C felony, Ind.Code § 35–43–2–1 (Burns 1979) and was found to be an Habitual Offender, Ind.Code § 35–50–2–8 (Burns Supp.1983). His sentence of two (2) years imprisonment upon the burglary charge was enhanced by an additional thirty (30) years upon the habitual offender finding.

His direct appeal raises two (2) issues for review:

(1) Whether the evidence is sufficient to sustain the conviction for burglary;

(2) Whether the trial court acquired jurisdiction to try the habitual offender charge when Defendant consented to return to Indiana from Illinois pursuant to the Interstate Agreement on Detainers without being informed of the possibility of the habitual offender sentencing enhancement provision.

\* \* \* \* \* \*

The record disclosed that on the morning of July 10, 1980, Edward Carda, the owner of D & E Auto Electric in Portage, Indiana, found that his store had been broken into. Among the items found to be missing were a television set, several radios, a number of starters and alternators, one hundred dollars ($100.00), and a plastic garbage can having a distinctive black spot. The police who investigated the burglary found that the rear door had been pried open and noticed three sets of footprints and some tire tracks near the building. They also discovered that the adjacent premises, Domino's Pizza Parlor, had been entered and that the cash register and juke box had been broken into. They found a tire tool lying on the floor next to the jukebox.

Earlier in the day, another police officer had stopped a vehicle driven by Bobby Goodman near the burglarized business and had taken Goodman's Learner's Permit. He gave the permit to police, who then proceeded to Goodman's address where they found Goodman, a large amount of change, and a radio which matched the description of the radios missing from D & E. While at the home where Goodman resided, the police noticed that the Defendant appeared, spoke briefly to a woman there, and then left. One officer noticed that a shoe print made by Defendant's shoe matched one of the prints found at the scene of the burglary. Another officer noticed that a green station wagon

parked at Goodman's address had the same tire configuration as did the tire prints found at the scene of the crime.

Goodman told the officers that he, Hank Williams, and the Defendant had committed the burglary. Subsequently, police searched the Defendant's residence and found a garbage can, which Carda later identified as the one taken from the D & E store. Upon Defendant's arrest, it was determined that his shoes matched the shoes which had left the prints near the burglarized store. Hank Williams also admitted his part in the burglary and implicated Goodman and the Defendant.

## ISSUE I

Defendant's argument that the evidence is insufficient to sustain the conviction for burglary is based upon his claim that the testimony of Goodman and Williams is incredible. He argues that their history of crime and drug abuse and their totally amoral characters, as well as their statements that their testimony was given in exchange for a guarantee from the prosecution that they would not be charged as habitual offenders, render their testimony incredible.

Defendant is asking us to rejudge the credibility of the accomplices' testimony. That we will not do unless the testimony is inherently incredible. *Forrester v. State*, (1982) Ind., 440 N.E.2d 475, 485; *Wallace v. State*, (1981) Ind., 426 N.E.2d 34, 42; *Bentley v. State*, (1981) Ind., 414 N.E.2d 573, 574. We do not agree with the Defendant that the only incriminating evidence is inherently unbelievable. While it is true that both accomplices had had inferior educations and many prior confrontations with the law and that Williams admitted that his memory had been affected by years of "sniffing" glue, the jury was apprised of each accomplice's personal history and prior criminal record. The jury was also informed of the benefit each man received in exchange for his testimony. *See Webb v. State*, (1980) Ind.App., 403 N.E.2d 359, 360. It was then up to the jury as the trier of the facts to believe whomever it chose. *Taylor v. State*, (1981) Ind., 425 N.E.2d 141, 143. Unquestionably, those elements rendered the veracity of the accomplices suspect, but the jury is in a better position to make the credibility determination than a court of appeals. We cannot say that a reasonable man could not believe the witnesses' testimony to be true. Further, in addition to the testimony of Goodman and Williams, there was circumstantial evidence implicating Defendant. His shoes matched those that left prints found at the scene of the crime, and a garbage can, positively identified by Carda as the one missing from his store, was found at his residence.

The evidence is sufficient to sustain the conviction.

## ISSUE II

In order to obtain jurisdiction over the Defendant, the Porter County Prosecutor's office sent a detainer to the Illinois penal authorities requesting the transfer of Defendant from the Illinois prison at Joliet to Porter County pursuant to the Interstate Agreement on Detainers, Ind.Code § 35–2.-1–2–4 (Burns 1979) [repealed 1982; recodified as Ind.Code § 35–33–10–4 (Burns Supp.1983)]. The detainer contained an information stating that Defendant was charged in Indiana with Burglary, a class C felony. On January 13, 1981, the Porter County Prosecutor added, on a page separate from the information, an allegation that Defendant was an habitual criminal. Ind.Code § 35–50–2–8 (Burns Supp.1983). On August 17, 1981, the Defendant consented to the transfer by signing a request for final disposition of all "untried indictments, informations or complaints on the basis of which detainers have been lodged against me from your state." The only charge listed on the form was Burglary, class C felony. Defendant now argues that he was not informed of the habitual offender information at the time he consented to the transfer and that had he known of it and its potential thirty (30) year penalty he would have contested the transfer as provided in Article 4 of the

Agreement on Detainers. Hence, he claims that his due process rights were violated when he was transferred to Indiana without an opportunity for a pre-transfer hearing.

We first note that Defendant made no objection to transfer prior to his motion to correct errors. We have held that violations of provisions of the Agreement on Detainers are waived unless the error is timely raised at trial. *Scrivener v. State,* (1982) Ind., 441 N.E.2d 954, 956 (speedy trial, Article 3(a)); *Webb v. State,* (1982) Ind., 437 N.E.2d 1330, 1332 (return without trial, Article 4(e)). Further, our court of appeals has held that even though a defendant's presence in Indiana for trial was secured without complying with the terms of the Agreement on Detainers, the failure to comply with the agreement did not warrant a complete dismissal of the charge or a reversal of the conviction. *Ramirez v. State,* (1983) Ind.App., 455 N.E.2d 609, 614.

■ We do not dispute Defendant's contention that, unless waived, he is entitled to a pre-transfer hearing pursuant to Article 4 of the Agreement on Detainers. *Cuyler v. Adams,* (1981) 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641. However, when Defendant consented to the transfer, he waived his right to a hearing. His argument that he would not have waived his right to the hearing had he known of the habitual offender charge is without merit. It was necessary that Defendant be informed of the "untried indictment, information, or complaint" against him, i.e. the burglary charge; however, it was not necessary that Defendant be informed of the habitual offender count, inasmuch as the habitual offender statute does not establish a separate crime, but rather, provides only for the enhancement of the sentence for the crime charged. *Wilburn v. State,* (1982) Ind., 442 N.E.2d 1098, 1100; *Williams v. State,* (1982) Ind., 431 N.E.2d 793, 795; *Haynes v. State,* (1982) Ind., 431 N.E.2d 83, 88. A defendant may not be sentenced under the habitual offender statute until he has been convicted of the underlying felony with which he was charged. *Wilburn v. State,* 442 N.E.2d at 1100.

The Court of Criminal Appeals of Tennessee, when faced with a nearly identical problem, wrote:

"While the request for temporary custody did not list the habitual criminal counts of the indictments, this did not void the appellant's transfer to Tennessee. The transfer forms require the listing of 'offenses' with which the individual is charged. Habitual criminality is not an 'offense', but rather is a 'status' into which one can move upon conviction for the specified number of offenses. *Morelock v. State,* 2 Tenn.Cr.App. 423, 454 S.W.2d 189, 191 (1970). Article V(d) of the Compact provides:

'The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations, or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction. TCA, § 40-3901.'

The habitual criminal counts were contained in the indictments and were 'charges arising out of the same transaction.' There were no errors in the transfer and trial of the appellant under the Interstate Compact on Detainers."

*State v. Tyson,* (1980) Tenn.Cr.App., 603 S.W.2d 748, 752.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.