**John GAMBILL, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 183 S 11.**

Supreme Court of Indiana.

June 26, 1985.

524

Susan K. Carpenter, Public Defender, C.H. Gardner, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury of Murder. He received a sixty (60) year sentence.

The facts are: The victim, Ricky Martinez, was virtually unconscious following several hours of alcohol consumption at a party. Some of Martinez's friends carried him to a pickup truck. The friends placed Martinez in the cab of the truck and left. The following morning they returned to the truck and found him on the ground beside

the truck. His throat had been cut, several knife wounds were about the body and the head of the victim had been struck by an object with great force.

Appellant resided with a group of other men in a nearby home owned by Bruce Webber. On the day in question appellant threatened another resident, Walter Gordesky, into accompanying him on a walk. The pair walked in the direction of the home of appellant's mother. When they arrived, the appellant proceeded to break into her car and steal a citizens band radio. Appellant gave the radio to Gordesky to carry and they proceeded to the home of Lonnie Staples where appellant stole another radio.

The pair then began to walk toward their home. As they neared the home, appellant saw the victim in the cab of the truck. Appellant told Gordesky that he would remove Martinez from the truck. As appellant attempted to do that, the victim resisted and struck appellant. Appellant became angry and stabbed the victim with the knife. The victim was then pulled from the truck and his throat was cut. Appellant took the victim's wallet and started to leave.

As appellant walked behind a nearby building, he stopped and picked up a 2 × 4. He returned to the body and hit the victim in the head three times with the 2 × 4. The board was left at the scene and the knife was tossed onto the roof of a nearby building. After they returned to their home, appellant ordered Gordesky to return to the scene with a broom to remove all footprints which might have been left in the snow. Later appellant revealed his role in the activities to Webber and to one other resident of the home. Webber, Gordesky and the other resident, William Netherly, all testified at trial against appellant.

■ Gordesky testified pursuant to a plea agreement. Appellant raises several issues related to the relevancy of various portions of this testimony. Appellant did not set out either in the Motion to Correct Error or in his brief for this appeal the specific testimony and related objections

upon which he now bases his argument. Under Ind.R.Tr.P. 59(D) the issue is waived. *Nunn v. State* (1983), Ind., 450 N.E.2d 495. However, we address the issues as follows.

Appellant contends the court erred when it permitted Gordesky to testify concerning his personal background over appellant's relevancy objection. The State inquired of Gordesky where and under what circumstances he was raised. The State also questioned the witness concerning his previous marriage. Appellant now contends this testimony was not relevant to the issue at trial. Appellant contends the only purpose served by this testimony was to elicit sympathy from the jury for this less than reliable witness.

■ Appellant did not raise a specific objection to the testimony at issue. He merely raised the general objection of relevancy. A general objection of this nature without further explanation, or the giving of grounds for its lack of admissibility preserves no issue for appeal. *Hare v. State* (1984), Ind., 467 N.E.2d 7. We deem appellant's argument on this issue waived.

■ Appellant argues the trial court erred when it permitted Gordesky to testify concerning changes which occurred in the operation of the household after appellant became a resident. Gordesky testified the household had become a "mess" and that appellant dominated the household with his threats of bodily injury. Appellant offered no trial objection to this testimony. He has therefore preserved no error for appellate review. *Tabor v. State* (1984), Ind., 461 N.E.2d 118; *Smith v. State* (1983), Ind., 443 N.E.2d 1187.

Appellant maintains the court erred when it permitted Gordesky to answer the following question. "Mr. Gordesky, would you consider yourself as the defendant's goffer [sic]?" Following Gordesky's affirmative answer, appellant objected on the grounds the witness could not describe how he would characterize himself. This objection was after the answer and appellant did not request that the answer be stricken.

For appellant's objection to have been timely, and thus preserved for appellate review, the objection must have been made before the answer was given. *Harrington v. State* (1984), Ind., 459 N.E.2d 369; *Tinnin v. State* (1981), 275 Ind. 203, 416 N.E.2d 116.

Appellant argues the court erred when it permitted Gordesky to testify as to specific acts of violence committed by appellant in and around the residence. Appellant did not object to this testimony at trial and thus he has waived this issue. *Tabor, supra.*

■ Appellant avers the court erred when it permitted Gordesky to testify concerning the thefts of the citizens band radios. Evidence of other crimes is generally not admissible to prove the guilt of the charged offense. *McCormick v. State* (1982), Ind., 437 N.E.2d 993. The State argues the testimony was admissible under the *res gestae* exception to the rule citing *Cary v. State* (1984), Ind., 469 N.E.2d 459. The admission of evidence under the *res gestae* exception is within the sound discretion of the trial court. *Blankenship v. State* (1984), Ind., 462 N.E.2d 1311.

We hold the court did not abuse its discretion in admitting this evidence. These thefts involved the same men in an act near in time and place to the incident at issue. These acts were closely connected as part of a crime binge culminating in the homicide at issue. Thus the evidence was properly admitted under the exception.

Appellant contends the court erred when it permitted Gordesky to testify concerning appellant's appearance on days other than the day of the incident. Gordesky testified that on the night in question appellant's eyes were real wide and that he "talked real wild like he was super scared or super mad at someone." The witness was then asked if he had ever observed appellant's eyes look like that in the past. Appellant's counsel then offered a general objection on the grounds of relevancy. This general objection does not preserve an issue for appellate review. *Hare, supra.*

■ Appellant next maintains the court erred when it admitted certain physical evidence. During the testimony of Gordesky the State asked the witness to identify Exhibits Nos. 23 and 23(A), two pieces of 2 × 4; Exhibits Nos. 21(A) and 21(B), a broom in two sections; and Exhibit No. 24(B), a knife. Appellant objected on the grounds that a sufficient foundation had not been laid to admit the exhibits.

Appellant challenges the in-court identification of each object. We find the testimony of Gordesky was sufficient to satisfy the requirement that the witness be able to identify the exhibit as one like the object associated with the crime. Appellant's argument goes to the weight of the exhibit and not to its admissibility. *Jackson v. State* (1984), Ind., 462 N.E.2d 63; *Bullock v. State* (1978), 178 Ind.App. 316, 382 N.E.2d 179.

Appellant submits the court erred when it permitted the doctor who performed the autopsy to testify that the wounds on the body of the victim were consistent with the use of the 2 × 4 and the knife discussed above. Appellant contends Dr. Dogracias was not sufficiently qualified to offer these opinions as this was the first pathological examination the doctor had performed involving a stab wound. Additionally, appellant contends the doctor's testimony was not consistent with the autopsy report prepared by the doctor.

In the autopsy report the doctor indicated he believed two knives had been used to commit the crime. At trial he indicated he now believed that only one knife was involved. Appellant argues that the change of opinion coupled with the lack of experience demonstrate a lack of qualification to offer expert testimony.

■ The determination of whether a witness is qualified to testify as an expert is in the sound discretion of the trial court. *Forrester v. State* (1982), Ind., 440 N.E.2d 475; *Moody v. State* (1983), Ind., 448 N.E.2d 660.

■ Dr. Dogracias was eminently qualified by training and experience in the field

of pathology. Although this was his first case involving a stabbing, he was qualified to offer his expert testimony on the question at issue. The fact this was his first case of this nature goes to the weight of the testimony and not to its admissibility. *See Niehaus v. State* (1977), 265 Ind. 655, 359 N.E.2d 513, *cert. denied*, 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188.

Appellant maintains the court erred when it permitted Dr. Dogracias to testify concerning his review of an unpublished deposition given by another pathologist, Dr. Benz. Dr. Dogracias was unsure of the two-knife theory presented in the autopsy report. Thus he forwarded a copy of all relevant information to Dr. Benz for his evaluation. Based on this information, Dr. Benz gave a deposition. A copy of this deposition was given to Dr. Dogracias who reviewed it prior to trial. Based upon this review, Dr. Dogracias concluded at trial only one knife was involved.

The court ruled in appellant's favor on three occasions when appellant objected on the grounds of hearsay concerning the Benz deposition. Thus no hearsay testimony from the Benz deposition was placed before the jury. An expert witness is free to refer to other professional sources in formulating his expert testimony. *See Wilber v. State* (1984), Ind., 460 N.E.2d 142 and *Smith v. State* (1972), 259 Ind. 187, 285 N.E.2d 275.

Appellant raises several errors concerning the testimony provided by State's witness Webber. Webber testified he observed appellant playing with knives on occasions prior to the incident. Appellant now alleges this as error. He did not object at trial to this testimony and any alleged error is waived. *Tabor, supra.*

Appellant also objects to the court permitting Webber to testify appellant came into Webber's bedroom and held him down on the bed. While holding him in that position, appellant took a butcher knife and traced around Webber's body. The knife cut the bedding in several locations. Appellant contends this evidence is not relevant.

Appellant is incorrect. This event coming close on the heels of appellant's admission to Webber that he committed the crime in question is clearly an implied threat. Threats are relevant and proper for consideration by the jury. *Stanley v. State* (1982), Ind.App., 435 N.E.2d 54.

During the testimony of Webber the court admitted a letter appellant wrote to Webber. The letter was written after the incident but before appellant's arrest. In the letter appellant demands that Webber return a chair. The letter contains a threat to use legal action to obtain the chair if Webber does not voluntarily comply with the request. At the end of the letter appellant states, "I will get it back one way or another!"

The State now argues this was also an implied threat and admissible under the argument above. We do not agree. A threat is, at the least, an attempt to conceal evidence bearing upon a defendant's guilty knowledge. *See Cox v. State* (1981), Ind. App. 422 N.E.2d 357 citing *United States v. Flick* (7th Cir.1975), 516 F.2d 489, *cert. denied*, 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260. This letter bears no mention of the murder nor is its message as menacing as the knife incident. We find the letter was not admissible as it was not relevant to the issue of the case. However, it is only when the error has caused prejudice that the cause will be reversed. *Watkins v. State* (1984), Ind., 460 N.E.2d 514. In light of the evidence we do not believe appellant was prejudiced by the admission of the letter.

Appellant next contends the court erred when it permitted an F.B.I. laboratory technician to testify concerning certain tests which were performed on blood samples taken from the victim and blood samples taken from the 2 × 4. Appellant objected to the admission based upon an inadequate chain of custody.

We recently restated the standards applicable to a chain of custody argument.

"The State's burden in an attack on the validity of a chain of custody is to show the continuous whereabouts of the evidence. The mere possibility the evidence could have been tampered with or that an alteration or substitution could have been accomplished does not make the evidence inadmissible. The State is not required to exclude every possibility of tampering. However, when the evidence is fungible, like the evidence in the case at bar, the importance of proper chain of custody is enhanced. The proper showing of a chain of custody must give reasonable assurance that the property passed through the hands of the parties in an undisturbed condition." (Citations omitted.) *Gorman v. State* (1984), Ind., 463 N.E.2d 254, 256.

█ After the board was recovered from the scene, it was held by the police until it was sent by registered mail to the F.B.I. offices. There the board was logged in and retained until the tests were performed. All of the customary identification procedures were followed by both the local police and the F.B.I. There is reasonable assurance that the property moved through the hands of the parties in an undisturbed condition.

█ The State's evidence showed that the blood was drawn from the victim at the time of the autopsy and given to a police officer. The officer placed the usual identification markings on the sample and then put it in a refrigerator at the police station. The refrigerator was unlocked; however, only two police officers had access to the refrigerator. Several days later the officer mailed the vial, along with other evidence, to the F.B.I. using registered mail. Upon receipt of the package, it was logged in and retained until the tests were performed.

Appellant argues that the fact the vial was in an unlocked refrigerator to which more than one officer had access constitutes a break in the chain of custody. He also cites to the initial confusion in the testimony of one of the F.B.I. officials who believed the vial had been hand delivered and not mailed.

Appellant does no more than raise the mere possibility that the evidence could have been tampered with or that a substitution or alteration could have been made. *Gorman* requires more than this mere possibility. We find no error based upon an inadequate chain of custody.

█ Appellant raises a similar argument as to testimony given concerning hair samples which were taken from the head of the victim and from the 2 × 4. The police were able to obtain a single strand of hair from the 2 × 4. This was sent to the F.B.I. along with hair samples from the head of the victim. The technician who examined the hair recovered from the board testified that the sample was human hair from the head of a Caucasian. This group would include Hispanics. He testified the hair had been broken off at the skin and had been damaged by being crushed in two locations. He further indicated this damage was consistent with a blow to the head. The technician, however, was not able to complete a comparison which may have linked the sample from the board with the known sample taken from the head of the victim.

Appellant objected at trial and now to the admission of this testimony based upon a failure to establish a proper chain of custody. He first argues the State failed to account for the location of the hair sample between the time the sample was received at the F.B.I. laboratory until the time it was actually analyzed. One officer testified he received the sample along with other evidence related to this crime. At a later date the sample was given to the technician for analysis. Appellant contends the State failed to show where and for how long the sample was stored prior to the analysis. He maintains that since there were two hair samples, one taken from the board and one taken from the victim, there was a strong possibility of the two being confused.

We find no reversible error in this argument. To meet its burden, the State did not have to eliminate all possibilities of

tampering or substitution. *Gorman, supra.* The State must provide reasonable assurance that the property passed from an F.B.I. agent to an F.B.I. technician in an undisturbed condition. The officer who received the material at the Evidence Control Center for the F.B.I. testified that he opened the package and logged in the samples, one of which was the hair sample. The hair sample was then later given to the technician. The technician testified the sample contained the laboratory case number which had been assigned and the laboratory identification number. We believe this is sufficient to provide reasonable assurance the sample was not tampered with or a substitution made.

Appellant next maintains the court erred when it permitted State's witness Netherly to testify concerning his military service record, including the fact he won a Purple Heart during his service in Viet Nam. Appellant offered only a general objection at trial to the testimony. Thus he has preserved no error for appellate review. *Hare, supra.*

Appellant contends the evidence was insufficient to support the conviction. He first argues the testimony of witness Gordesky was inherently unreliable citing three factors: Gordesky's past criminal record, his plea bargain in the instant case and discrepancies between his trial testimony, prior statements and the testimony of other witnesses.

This Court does not reweigh the evidence nor judge the credibility of witnesses. *Davenport v. State* (1984), Ind., 464 N.E.2d 1302.

In the case at bar the jury was fully advised of the prior criminal record of the witness. The terms of the plea bargain were also placed before the jury. The members of the jury heard the conflicts between Gordesky's version of the details of the crime and that presented by other witnesses. The jury was also exposed to the prior statements made by the witness. It was up to the jury as the trier of fact to believe whomever it chose. *Dotson v. State* (1984), Ind., 463 N.E.2d 266.

Appellant secondly avers there is a lack of evidence to demonstrate he possessed the requisite intent to commit the crime. Appellant presented evidence of the consumption of alcohol on the night of the incident. He alleges the State was thus obligated to rebut this evidence in order to demonstrate beyond a reasonable doubt the element of intent. He cites to *Terry v. State* (1984), Ind., 465 N.E.2d 1085, for the proposition that voluntary intoxication is a valid defense to the intent element of a crime.

We have held that the intent to kill can be inferred from the intentional use of a deadly weapon in a manner reasonably calculated to produce death or great bodily harm. *Davenport, supra.* Appellant's use of the knife and the 2 × 4 in the manner described established the element of intent.

In *Terry* we stated:

"A defendant in Indiana can offer a defense of voluntary intoxication to any crime. The potential of this defense should not be confused with the reality of the situation. It is difficult to envision a finding of not guilty by reason of intoxication when the acts committed require a significant degree of physical or intellectual skills. *As a general proposition, a defendant should not be relieved of responsibility when he was able to devise a plan, operate equipment, instruct the behavior of others or carry out acts requiring physical skill.*" (emphasis added.). *Terry v. State,* 465 N.E.2d at 1088.

In the instant case appellant, after consuming the alcohol, was able to perform many acts requiring physical and mental skills. He walked several blocks to the location where he was able to break into two automobiles. He was able to wield the knife and the board in a deadly manner. He had the presence of mind to destroy the stolen wallet and to dispose of the knife. He ordered Gordesky to sweep away footprints which had been left in the snow. The jury could find from these acts that

appellant was aware of his actions and had the ability to form the requisite intent.

 Lastly, appellant contends he was denied a fair trial as the State failed to produce an inconsistent prior statement made by Gordesky. Appellant had sought and had been granted a general discovery order. The State complied with the order and produced a wide variety of documents. The State, however, did not provide a copy of a statement taken by the police from Gordesky on July 18, 1980. Appellant did not become aware of the statement until a month after the completion of the trial.

The State does not dispute appellant's allegation of the failure to provide. However, the State contends the result of such failure is not grounds for a reversal of the conviction. The standard of review to be applied to this issue varies based upon the nature of the discovery request. *See Richard v. State* (1978), 269 Ind. 607, 382 N.E.2d 899, *cert. denied,* 440 U.S. 965, 99 S.Ct. 1515, 59 L.Ed.2d 781.

In the case at bar the discovery order sought:

> "3. That the State produce any and all written or recorded statements, waivers or agreements made by persons who the State knows have information concerning the charges herein."

Under the Richard system of catagorizing discovery requests, this is a general request.

> "When defense requests are phrased so generally, the prosecutor's duty to disclose can be measured only by reference to the question of whether the evidence in his possession is so 'obviously exculpatory' that his failure to turn it over denied the defendant a fair trial." *Id.* at 614, 382 N.E.2d at 904.

The United States Supreme Court, in discussing the failure to provide following a general request, indicated no reversal is required unless the omitted evidence creates a reasonable doubt that did not otherwise exist. *United States v. Agurs* (1976), 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342.

Reviewing the omitted statement in light of the above standards, we hold appellant was not denied a fair trial. The omitted statement was one of a series Gordesky had given the police. The basic description of the incident did not vary greatly from statement to statement. However, the description of the details of the crime did vary. Thus this statement was in the nature of an impeaching statement and was not one which was obviously exculpatory. Accordingly, appellant was not denied a fair trial.

The trial court is in all things affirmed.

All Justices concur except HUNTER, J., not participating.