Kenneth SCHNITZ, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 34A02–9403–CR–146.

Court of Appeals of Indiana,
Second District.

May 19, 1995.

John Pinnow, Sp. Asst. to State Public Defender, Greenwood, IN, for appellant.

Pamela Carter, Atty. Gen. of Ind., Jodi Kathryn Rowe, Deputy Atty. Gen., Indianapolis, IN, for appellee.

## OPINION

KIRSCH, Judge.

### STATEMENT OF THE CASE

Kenneth Schnitz appeals his conviction for Dealing in Cocaine,[1] a Class A felony. He raises five issues, which we restate and consolidate as:

1) Whether there was sufficient evidence to convict him;

2) Whether the trial court erred when it admitted into evidence an aerial photomap;

3) Whether the prosecutor committed misconduct in his closing argument;

4) Whether the enhancement provision of IC 35–48–4–1 is unconstitutional.

We affirm.

### FACTS AND PROCEDURAL HISTORY

The facts most favorable to the verdict show that in August of 1989, Gary Blakley met Schnitz. Blakley worked as a confidential informant for the Kokomo Police Department. On August 14, Blakley went to Schnitz' apartment which lies 246 feet from Kokomo High School. Blakley told Schnitz that he wanted to purchase cocaine. Schnitz answered that he could procure the drug and proceeded to call a drug source. Schnitz then told Blakley that one-quarter ounce of cocaine would cost $450.00. Blakley then left Schnitz' residence, telling him that he needed to check with "[his] man" and that he would soon contact Schnitz. Blakley left, in fact, to meet with officer Jack Adams of the Kokomo Police Department, who would help Blakley prepare for the transaction.

Blakley then returned to Schnitz' apartment where David Bousum awaited Blakley. Bousum told Blakley that he could procure one-quarter ounce of cocaine for $450.00. Blakley gave Bousum the $450.00, and Bousum left Schnitz' residence to obtain cocaine. Bousum returned one to two hours later with

---

1. IC 35–48–4–1 (1990 Supp.).

a cellophane bag containing cocaine. After he and Schnitz injected themselves with some of the cocaine, Bousum gave the bag to Blakley. Before Blakley left Schnitz' residence, Schnitz told Blakley that he would call Blakley the next day to arrange a deal if Blakley did not contact him first.

Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

■ Schnitz argues the evidence was insufficient to convict him in two ways. First, he contends the evidence does not show that he aided, induced, or caused Bousum to deliver drugs to Blakley. Second, he argues that the State did not present sufficient evidence to show that Schnitz knew that the delivery occurred within 1,000 feet of a school.

Schnitz was convicted of Dealing in Cocaine, a Class A felony. IC 35–48–4–1 (1990 Supp.) provides:

"(a) A person who:

(1) knowingly or intentionally:

. . . . .

(C) delivers[ ] . . .

cocaine . . .

. . . . .

commits dealing in cocaine . . . a Class B felony, except as provided in subsection (b).

(b) The offense is a Class A felony if[ ]

. . . . .

(3) the person:

. . . . .

(A) delivered . . . the drug . . . within one thousand (1000) feet of school property. . . ."

■ Because Schnitz was convicted under an accomplice theory of liability, the State needed to satisfy the requirements of IC 35–41–2–4 (1988 Ed.), which provides:

"A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:

(1) Has not been prosecuted for the offense;

(2) Has not been convicted of the offense; or

(3) Has been acquitted of the offense."

When sufficiency of the evidence is challenged, we do not reweigh the evidence or judge the credibility of the witnesses; rather, we look to the evidence most favorable to the State with all reasonable inferences therefrom. *Lilly v. State* (1987), Ind., 506 N.E.2d 23, 24. If there is substantial evidence of probative value from which the trier of fact might reasonably infer guilt beyond a reasonable doubt, the verdict will not be disturbed. *Id.* A conviction may be supported by circumstantial evidence alone. *Sayles v. State* (1987), Ind.App., 513 N.E.2d 183, 186, *trans. denied.*

■ Where evidence shows that an accomplice acted in concert with those who physically committed the elements of the crime, the evidence is sufficient to support a conviction on an accessory theory. *Taylor v. State* (1991), Ind., 578 N.E.2d 664, 666. The State is not required to show that the accomplice personally participated in the commission of each element of the offense. *Fox v. State* (1986), Ind., 497 N.E.2d 221, 227. Mere presence at the scene of a crime is not sufficient to support a conviction based on an accessory theory, but such presence may be considered in determining guilt. *Weyls v. State* (1992), Ind.App., 598 N.E.2d 610, 614–15, *trans. denied.*

"Other factors from which the trier of fact may infer the defendant participated in the crime include 1) failure to oppose a crime, 2) companionship with one engaged in criminal activity, and 3) course of conduct before, during and after the occurrence of the crime."

*Id.* at 615. Moreover, a fact-finder may consider affirmative conduct from which reasonable inferences of a common design or purpose to effect the commission of a crime may be drawn in determining whether a person aids another to commit an offense. *Rivera v. State* (1991), Ind.App., 575 N.E.2d 1072, 1074, *trans. denied.*

Here, Schnitz took several affirmative steps that show he knowingly or intentionally aided Bousum to commit the offense of dealing in cocaine. When asked by Blakley if he could procure cocaine, Schnitz said that he could. Schnitz then telephoned a source. He arranged for Bousum to meet Blakley at his own apartment where the transaction was consummated. Furthermore, Schnitz failed to oppose the execution of the transaction between Bousum and Blakley. Schnitz acted in concert with Bousum and Blakley and took affirmative steps to both initiate and consummate the deal. The State presented sufficient evidence to show that Schnitz intentionally or knowingly aided Bousum to commit the offense of dealing cocaine.

Schnitz next argues that the State did not present sufficient evidence to show that Schnitz knew the delivery of cocaine occurred within 1,000 feet of a school. The State responds by contending that Indiana law does not require the showing of such knowledge. We agree with the State.

In making his argument, Schnitz asks us to revisit our decision in *Williford v. State* (1991), Ind.App., 571 N.E.2d 310, *trans. denied,* 577 N.E.2d 963 (DeBruler, J., dissenting). In *Williford,* we held that the State need not prove any *mens rea* to increase a dealing offense from a Class B felony to a Class A felony, saying:

> "[The defendant] ignores the legislative intent to create a 'drug free zone' around the schools. A dealer's lack of knowledge of his proximity to the schools does not make the illegal drug any less harmful to the youth in whose hands it may eventually come to rest. Nor does the fact that the transaction occurred at a time and place where minors are unlikely to be present ensure that narcotics will find their way out of the drug-free zone before they find their way into the bookbags, lockers and pockets of our schoolchildren. The intent of the legislature is clear: those who choose to deal drugs in the vicinity of schools do so at their own peril."

*Id.* at 313.

The same reasoning applies here. The State was not required to show that Schnitz knew he was within 1000 feet of the school when the drug transaction occurred.

## II. Admission of Photomap

Schnitz claims the trial court committed prejudicial error when it admitted an aerial photomap showing the area surrounding Schnitz' residence, including Kokomo High School.

A trial court has wide discretion in determining the admissibility of photographic evidence and the exercise of that discretion will not be disturbed absent a showing of abuse of that discretion. *Mitchell v. State* (1990), Ind., 557 N.E.2d 660, 665. Photographs which demonstrate a witness's testimony are generally admissible. *Id.* Photographs of a crime scene are relevant if they aid the trier of fact in orienting itself to the circumstances surrounding the crime. *Baskin v. State* (1989), Ind., 546 N.E.2d 1191, 1192 *cert. denied,* —— U.S. ——, 113 S.Ct. 296, 121 L.Ed.2d 220 (1992). A proper foundation is laid for photographs if there is testimony from a reliable source that the photographs are accurate representations of the things the photographs are intended to portray. *Broadus v. State* (1986), Ind., 487 N.E.2d 1298, 1306.

At trial, Lawrence Lambert, an engineer for the city of Kokomo, testified that Schnitz' residence was 246 feet from Kokomo High School. He based his testimony on an aerial photomap which was kept in the official city records. The map provided the basis for Lambert's testimony regarding the distance from Schnitz' residence to Kokomo High School.

Schnitz correctly notes that Lambert did not physically measure the distance nor did he have personal knowledge about the preparation or verification of the map. Lambert did testify, however, that he measured the map with his engineer's scale, that the map had a scale of one inch equaling fifty feet, and that he physically observed the area he measured and believed his physical observations to confirm the 246 foot measurement he got from the map. Through Lambert's testimony, the State laid a sufficient foundation for the accuracy of the map. The trial court

did not err when it admitted the photomap into evidence.

### III. Prosecutorial Misconduct in Closing Argument[2]

 Schnitz argues the prosecutor committed misconduct by exhorting the jury to convict Schnitz as part of the war on drugs so that a message might be sent to all those engaged in the trafficking of narcotics.

 The right to a fair trial prevents the prosecutor from urging the jury to decide the case upon improper and irrelevant reasons. *Fleenor v. State* (1993), Ind., 622 N.E.2d 140, 150 *cert. denied,* —— U.S. ——, 115 S.Ct. 507, 130 L.Ed.2d 415 (1994). Our supreme court has developed a two-part analysis when prosecutorial misconduct is alleged:

"In reviewing a charge of prosecutorial misconduct, this Court first determines whether there was misconduct by the prosecutor, and second, considers whether that misconduct under all the circumstances placed the defendant in a position of grave peril to which he should not have been subjected. This position is measured by the probable persuasive effect of any misconduct on the jury's decision and whether there were repeated instances of misconduct which would evidence a deliberate attempt to improperly prejudice the defendant."

*Id.* (quoting *Smith v. State* (1987), Ind., 516 N.E.2d 1055, 1063 *cert. denied,* 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 347 (1988); citations omitted).

During his closing argument, the prosecutor addressed the jury as follows:

"Kenny Schnitz just being caught up in this thing, not a target of the investigation? Does that mean police officers ... should totally ignore him? Forget it? We go out to get David Bousum and he happens to be there, does that mean you forget this guy altogether? Of course not, Ladies and Gentlemen? *There's a war on drugs in this country.* A lot of people

involved in it. *The only way you stop it is to prosecute the people you have cases on.* That means you prosecute the people that are the king pins, the heavy suppliers, you catch the runner in between and the people that set up deals *and that's what Kenny Schnitz was doing. He was setting up a deal to get something for himself.* What he got was that shot of cocaine...."

. . . . .

"Ladies and Gentlemen, I think if you go back into that jury room and vote guilty on this case, *you'll send a message to all the other dope dealers in this community* that you're not going to tolerate people that get involved in transactions for their own benefit. Send a message to all the other runners out there that *if you're going to set up a deal to get your share of the dope then you can go to jail just like anyone else.* The only way you can send that message to this community is to vote guilty, and that's what I ask you to do."

*Record* at 37–38, 40 (emphases added).

Here, the prosecutor did not urge the jury to convict Schnitz for improper or irrelevant reasons. While the prosecutor did make references to the war on drugs, each reference was accompanied by an exhortation to prosecute and convict those who were in fact breaking the law. The prosecutor committed no misconduct in his closing argument.

### IV. Constitutionality of Statutory Enhancement

Schnitz finally argues that the statutory enhancement of his offense from a Class B felony to a Class A felony violated his constitutional rights in three ways: 1) The enhancement resulted in a penalty disproportionate to the offense; 2) The enhancement denied him substantive due process; and, 3) The enhancement denied him equal protection of the law.

 Before addressing the merits of each constitutional claim, we note that every

---

**2.** The State argues that Schnitz failed to preserve this issue because he did not make a timely objection at trial. *See Lopez v. State* (1988), Ind., 527 N.E.2d 1119, 1125 (prompt objection at trial is required as a prerequisite of appellate review for alleged prosecutorial misconduct). Schnitz

attempts to circumvent the timely objection requirement by arguing that the prosecutor's remarks resulted in fundamental error. We choose to address this issue on the merits, and do not reach these collateral issues.

statute stands before this court clothed with a presumption of constitutionality, and such presumption continues until overcome by a showing to the contrary. *Hall v. State* (1980), 273 Ind. 425, 435, 403 N.E.2d 1382, 1389. Our supreme court has said that reviewing courts grant the challenged statute every reasonable presumption supporting its validity and place the burden upon the party challenging it to show unconstitutionality. *Brady v. State* (1991), Ind., 575 N.E.2d 981, 984. Before a statute will be declared repugnant to the Constitutions its fatal defects must be apparent. *Id.*

## A. Disproportionate Penalty

■ Schnitz argues that the enhancement of his offense violated Article I, § 16 of the Indiana Constitution. That provision requires that all criminal penalties be proportionate to the nature of the offense.

■ Determining the appropriate sentence for a crime is a function properly exercised by the legislature. *Steelman v. State* (1992), Ind.App., 602 N.E.2d 152, 160. A reviewing court will not disturb the legislature's determination unless there is a showing of clear constitutional infirmity. *Id.* Courts are not free to set aside legislatively sanctioned penalties because they seem too severe to the reviewing court. *Clark v. State* (1990), Ind., 561 N.E.2d 759, 765. Prison sentences, however, may be so disproportionate to the severity of the crime that they constitute violations of the Indiana Constitution. *Cunningham v. State* (1984), Ind.App., 469 N.E.2d 1, 8, *trans. denied.* Indiana proportionality analysis considers both the nature and gravity of the offense. *Moore v. State* (1987), Ind., 515 N.E.2d 1099, 1105.

Schnitz relies on three cases to show that his sentence is disproportionate to the offense: *Best v. State* (1991), Ind., 566 N.E.2d 1027; *Clark v. State* (1990), Ind., 561 N.E.2d 759; and *Conner v. State* (1993), Ind., 626 N.E.2d 803, 806. In *Best* and *Clark*, the defendants were arrested for Operating While Intoxicated, normally a Class A misdemeanor but elevated to a Class D felony because both Best and Clark had prior Operating While Intoxicated Convictions within the previous five years. The presumptive sentence for the Class D felony was two years at the time Best and Clark committed their crimes. IC 35-50-2-7 (1988 Ed.). By receiving the greater Class D felony punishment, Best and Clark were eligible for habitual offender sentence enhancement, twenty years for Best and thirty years for Clark. Our supreme court ruled that these sentences were disproportionate to the offenses committed, noting the modest nature of the crime that triggered the habitual offender enhancement in both cases.

In *Conner*, the defendant was convicted of distribution of a substance represented to be marijuana; he received a six-year sentence, twice as much as what he could have received for distributing marijuana itself. This, said the supreme court, made Collins' sentence disproportionate to the crime he committed.

Schnitz' case presents facts that distinguish it from *Best, Clark,* and *Conner. Best* and *Clark* involved a relatively minor offense with a presumptive sentence of two years enhanced more than ten-fold. *Conner* involved a Class C felony; the Supreme Court ruled that the sentence was disproportionate because the defendant was punished more severely than one who actually dealt marijuana.

Here, Schnitz committed a more serious crime than the defendants in *Best, Clark,* and *Conner.* By classifying dealing in cocaine as a Class B felony, our legislature has made the determination that dealing in cocaine is a serious offense. By increasing the crime from a Class B felony to a Class A felony for committing the offense within 1,000 feet of a school, our legislature has determined that schoolchildren need extra protection from the adverse affects of drug trafficking. *Williford*, 571 N.E.2d at 313. There is no constitutional infirmity here, and the legislative enhancement was entirely reasonable. Schnitz' thirty-year sentence is not disproportionate to either the nature or the gravity of the offense he committed.

## B. Substantive Due Process

■ Schnitz argues that his enhanced penalty denies him substantive due process of law under the Fourteenth Amendment to the United States Constitution. Because

Schnitz concedes that no fundamental rights are raised in his challenge, he agrees that the proper question is to determine whether enhancing the offense of dealing in cocaine from a Class B to a Class A felony is rationally related to a State interest. *See Indiana High School Athletic Association, Inc. v. Schafer* (1992), Ind.App., 598 N.E.2d 540, 551, *trans. denied; Maher v. State* (1993), Ind.App., 612 N.E.2d 1063, 1066.

As discussed in *Williford*, 571 N.E.2d at 313, the purpose of the school zone enhancement provision is to help create drug-free zones around schools to protect children from the evils of drugs and drug-trafficking. Increasing punishment for dealing drugs within 1,000 feet of a school is rationally related to this objective. Schnitz was not denied substantive due process of law.

### C. Equal Protection Challenge

■ Finally, Schnitz argues that the school zone enhancement provision violates the equal protection provisions of the Fourteenth Amendment of the United States Constitution. The equal protection clause provides in relevant part: "No state shall ... deny to any person within its jurisdiction the equal protection of the laws."

■ In addressing an equal protection challenge, we must first determine which level of scrutiny is applicable: the traditional "rational basis" analysis or the more stringent "strict scrutiny" analysis. We will apply a rational basis analysis except where the classification is suspect or involves fundamental rights. *State v. Alcorn* (1994), Ind., 638 N.E.2d 1242, 1245. Equal protection analysis requires strict scrutiny only when the classification impinges impermissibly upon the exercise of fundamental rights or operates to the peculiar disadvantage of a certain class. *Rohrabaugh v. Wagoner* (1980), 274 Ind. 661, 664, 413 N.E.2d 891, 893. Examples of fundamental rights are voting, procreation, interstate travel, presenting a defense in a criminal action; examples of suspect classes are race, gender, national/ethnic origin, and alienage. *State v. Alcorn* (1994), Ind., 638 N.E.2d 1242, 1245. Schnitz concedes that no fundamental rights are at issue, and that the rational basis standard controls our inquiry.

We addressed whether the school zone enhancement provision under IC 35–48–4–1 violates equal protection of the laws in *Reynolds/Herr v. State* (1991), Ind.App., 582 N.E.2d 833, 838. In *Reynolds/Herr* we held that the enhancement provision was rationally related to the purpose of protecting children from the perils of drug trafficking, and thus did not violate equal protection of the laws.

■ Despite our holding in *Reynolds/Herr*, Schnitz argues that the enhancement provision is overbroad because the State presented no evidence that Schnitz knew that he was within 1,000 feet of the school. Schnitz also argues the statute is overbroad because nothing distinguishes Schnitz' drug transaction from thousands of other drug transactions other than proximity to a school.

■ We first note that overbreadth analysis in not available to Schnitz under the Indiana Constitution. *See Price v. State* (1993), Ind., 622 N.E.2d 954, 958. He can, however, raise this claim under the federal constitution. *See Helton v. State* (1993), Ind. App., 624 N.E.2d 499, 508. Schnitz' overbreadth arguments, however, misconstrue that doctrine. Courts engage in overbreadth analysis in determining when an otherwise valid criminal statute impermissibly encompasses constitutionally protected activity such as speech. *See Gooding v. Wilson* (1972), 405 U.S. 518, 520, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408; *Helton v. State* (1993), Ind. App., 624 N.E.2d 499, 508. Schnitz has not shown how the enhancement of dealing in cocaine from a Class B to a Class A felony could result in such an over-reaching application that constitutionally protected activities are improperly punished. We find no constitutional infirmity in the statute.

Affirmed.

FRIEDLANDER and STATON, JJ., concur.