**Rodney Lee BOYKO, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 02A03–9005–CR–200.**

Court of Appeals of Indiana, Third District.

Feb. 19, 1991.

---

Randall J. Hammond, Deputy Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., David M. Sommers, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Rodney Lee Boyko appeals his conviction for murder, raising the following three issues for our consideration:

   I.  Whether the evidence is sufficient to support Boyko's conviction for murder.

  II.  Whether the trial court erred in permitting Boyko to testify while he was still under the effects of medication given to him while incarcerated.

 III.  Whether the trial court erred in allowing the introduction of evidence regarding Boyko's prior juvenile record.

We affirm.

## I.

### *Sufficiency of the Evidence*

Boyko first contends that the evidence is insufficient to establish that he intended to kill the victim, Lester Clouse. In reviewing the sufficiency of the evidence, we do not reweigh the evidence or rejudge the credibility of the witnesses. *Brooks v. State* (1990), Ind., 560 N.E.2d 49, 53 *rehearing denied.* Rather, we view only the evidence most favorable to the State, together with all reasonable inferences to be drawn therefrom, to see if there is evidence of probative value from which a trier of fact could infer guilt beyond a reasonable doubt. *Id.*

Here, the evidence most favorable to the State indicates that Clouse and Boyko had a homosexual relationship. Boyko did not want to continue the relationship, and visit-

ed Clouse's apartment to speak with him about a statement which Clouse made to another of his acquaintances to the effect that if he could not have Boyko, nobody could. Boyko had a gun with him when he arrived at Clouse's apartment. Later he asked Clouse to take a ride with him. After Boyko began acting strangely, and before leaving the apartment, Clouse said to his roommates, "If I'm not back by this evening you know what happened to me."

Boyko drove Clouse to a secluded area, where he confronted Clouse with the statement. Boyko then discharged the gun, a .22 caliber semiautomatic pistol, several times into the air. Clouse grabbed the gun and the two returned to the car where he returned the pistol to Boyko. Boyko reloaded the gun and cocked it, placing a live round in the chamber. Clouse put his hand on Boyko's leg and Boyko shot Clouse in the chest.

After he shot Clouse, Boyko placed the body in the trunk of the car and attempted to enlist the help of several of his friends to dispose of the body. He also made plans to leave the state. After a high speed chase, he was apprehended by police seventeen hours after Clouse's death with the body still in the trunk of the car.

Boyko contended at trial that the gun accidentally discharged. However, the State introduced the testimony of a firearms expert who stated that the safety was operational and that the gun required a force of thirteen and a quarter to fifteen pounds of force to pull the trigger, an unusually high amount of "pull" for that type of gun. The firearms expert also testified that he conducted a test whereby he hit the gun one hundred times with a rubber mallet in various places, attempting to cause the gun to accidentally discharge. He was unsuccessful.

▪ The information charged that Boyko knowingly or intentionally killed Clouse. A

person engages in conduct "intentionally" if it is his conscious objective to do the act, and "knowingly" engages in conduct when he is aware of a high probability that he is doing so. Indiana Code 35–41–2–2 (Supplement 1990). The intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Meyers v. State* (1989), Ind., 547 N.E.2d 265, 267, *cert. den.* — U.S. ——, 110 S.Ct. 1954, 109 L.Ed.2d 316, *reh. den.* — U.S. ——, 110 S.Ct. 3262, 111 L.Ed.2d 772. Intent may also be established by the circumstances surrounding an incident. *LaBelle v. State* (1990), Ind., 550 N.E.2d 752, 755. The jury here could reasonably have inferred from Boyko's use of the pistol and the circumstances surrounding the shooting that Boyko intended to kill Clouse.

## II.

### *Competency*

Boyko next contends that the trial court erred in permitting him to testify despite the fact that he indicated he was still "groggy" from medicine which he took the night before while incarcerated. A witness is competent if he has sufficient mental capacity to perceive, to remember and to narrate the incident he has observed and to understand and appreciate the nature and obligation of an oath. *Ware v. State* (1978), 268 Ind. 563, 376 N.E.2d 1150, 1151. The determination of whether a witness is competent to testify lies within the sound discretion of the trial court, and we will reverse only upon a showing of a manifest abuse of that discretion. *Id.* 376 N.E.2d at 1152.

▪ We find no Indiana case which has considered the issue of whether a defendant is competent to testify when he is under the influence of narcotics at the time of his testimony.[1] However, other jurisdictions have generally held that drug use per

---

1. Several Indiana cases, however, have addressed the question of whether a witness is competent to testify when he was under the influence of intoxicating beverages or drugs at the time of the incident about which he was to testify, holding that such a situation raises a

question of credibility, not competency. *See e.g. Jones v. State* (1983), Ind., 445 N.E.2d 92; *Ware, supra; Candler v. State* (1977), 266 Ind. 440, 363 N.E.2d 1233; *State v. Kubiak* (1936), 210 Ind. 479, 4 N.E.2d 193.

se does not render a witness incompetent to testify. *See e.g. People v. Garrett* (1976), 44 Ill.App.3d 429, 3 Ill.Dec. 197, 358 N.E.2d 364; *People v. Stewart* (1975), 61 Mich.App. 167, 232 N.W.2d 347; *Commonwealth v. Marker* (1974), 231 Pa.Super 471, 331 A.2d 883; *U.S. v. Haili* (9th Cir.1971), 443 F.2d 1295; *Fox v. State* (1971), 87 Nev. 567, 491 P.2d 35. *See also* Annotation, "Use of Drugs as Affecting Competency or Credibility of Witness," 65 A.L.R.3d 705; 2 Wharton's Criminal Evidence § 376 (13th ed. 1972). These authorities have generally required a demonstration of impairment of one of the essential elements of competency before reversal is warranted.

■ Boyko is unable to make such a demonstration. The trial judge held a hearing on the extent of his impairment, where testimony was introduced which indicated that the drug which Boyko took, an anti-depressant with the generic name of Adapin, would remain in the system from eight to twenty-four hours after consumption. The trial judge continued the trial for a matter of hours, and then reconvened at 1:35 p.m. on November 29, 1989, sixteen hours after Boyko took the medicine. Boyko took the stand, indicated that he wished to testify, though he was "a little groggy" and proceeded to testify in a lucid, coherent manner. We find no abuse of discretion by the trial court in permitting Boyko to testify.

### III.

#### Juvenile Records

Boyko finally contends that the trial judge erred in permitting the jury to view evidence which indicated that he had a prior juvenile record. Prior to trial, Boyko sought and was granted a motion in limine prohibiting the introduction of his prior juvenile record. At trial, the State introduced several letters written by Boyko to Kevin Barrand, a friend who Boyko met at the Wood Youth Center, a detention facility for juveniles. During direct examination, the prosecutor asked Barrand if he knew why Boyko was being held in the Youth Center. Barrand answered "No". In addition, one of the letters contained the statement, "the two people I need to go to court

with is [sic] my parole officer and a counselor that I had while I was in Boy's [sic] School." Boyko complains that the introduction of this evidence impermissibly placed before the jury the fact that he had a prior juvenile record.

■ We disagree. Juvenile records are not admissible at trial for impeachment purposes. *Logston v. State* (1989), Ind., 535 N.E.2d 525, 527; *Wells v. State* (1990), Ind.App., 555 N.E.2d 1366, 1372, *rehearing denied.* However, the evidence was not introduced for impeachment purposes; it was introduced because the letter contained admissions regarding the killing of Clouse.

■ Moreover, the introduction of such evidence was harmless. Improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Jaske v. State* (1989), Ind., 539 N.E.2d 14, 22. Here, the reference to "Boys' School" was only in passing, and it was never indicated why Boyko was in the Youth Center. In addition, the jury could have concluded from the dates of the letters and the references that Boyko was in the Youth Center for the offense for which he was being tried. Barrand's testimony indicated that he was with Boyko in the Youth Center in February, 1989, apparently after the February 3 killing of Clouse. Finally, there was never any mention of the offense for which Boyko was in Boys' School. When Barrand was asked if he knew why Boyko was there, he responded "No."

In view of the overwhelming evidence of guilt, we are unable to conclude that there is a substantial likelihood that the evidence in question contributed to Boyko's conviction.

Affirmed.

GARRARD and ROBERTSON, JJ., concur.