Kelley L. KELLY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 84A05–9105–CR–00133.

Court of Appeals of Indiana,
Fifth District.

Feb. 20, 1992.

Transfer Denied April 20, 1992.

Eugene C. Hollander, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen. of Indiana and Deana N. McIntire, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

SHARPNACK, Judge.

Kelley Kelly appeals his conviction of the crime of criminal deviate conduct, a class B felony pursuant to Ind.Code § 35-42-4-2. We affirm.

Kelly brings four issues for our review, which we restate as follows:

1. Did the trial court properly exclude testimony of the victim's alleged past sexual conduct?

2. Did the trial court properly instruct the jury on the elements of the charged offense?

3. Is the judgment of conviction supported by sufficient evidence?

4. Did Kelly receive effective assistance of counsel?

The following facts are those most favorable to the judgment of conviction. The victim in this case was incarcerated in the Vigo County jail due to a probation violation. At the time, the jail was overcrowded and several prisoners were forced to sleep

on mattresses on the floor of the cell block. The cells themselves were kept open in order to afford the overflow prisoners access to the toilet facilities located in the cells.

On the evening of the assault, the victim was watching a group of fellow inmates playing cards. Kelly, who was one of a group of inmates who had come to dominate the other residents of the cell block, came over and asked the victim what was wrong with black guys. When the victim said that he had black friends, Kelly punched him in the face twice. Kelly then dragged the victim into a cell and told him to sit on a stool. When the victim refused, Kelly struck him again. The victim sat on the stool, and Kelly exposed his penis and told the victim to kiss it. Another inmate asked Kelly if he wanted a mattress or a blanket. Kelly told the inmate that he did not need a mattress and that he already had a blanket. He then tied the blanket between two beds so that the next actions could not be observed from outside.

Once Kelly had positioned the curtain, he told the victim to perform fellatio upon him. He grabbed the victim's head and attempted to force the victim to comply. At first the victim refused, but eventually succumbed. When Kelly was finished abusing the victim, he called out to his compatriots, who had been waiting just outside the cell in a manner that cut off the victim's means of escape, and asked if any of them would like to abuse the victim. The others declined.

The victim returned to his cell. When he had the opportunity the next morning, he contacted his probation officer through his mother. When his officer arrived at the jail, she saw that the victim's face was swollen and that he was distraught. After he attempted to tell her what had happened, she had him removed from the cell block.

Kelly first argues that the trial court erred in sustaining the state's rape shield objection to certain evidence concerning the victim's alleged prior homosexual history. He claims that the evidence was relevant because it would have bolstered his claim that he hit the victim when the victim made a sexual proposition to him, and he argues that the rape shield statute was not intended to apply under such circumstances.

Under our statute evidence of the sexual history of the alleged victim of a sexual offense generally is inadmissible in the trial of the alleged offender. I.C. § 35–37–4–4; *Skaggs v. State* (1982), Ind.App., 438 N.E.2d 301, 305, *rehearing denied,* 441 N.E.2d 19. The statute was enacted to prevent a general inquiry into the past sexual conduct of the victim in order to avoid "embarrassing the victim and subjecting her [or him] to possible public denigration." *Thomas v. State* (1984), Ind., 471 N.E.2d 681, 683.

The testimony here falls squarely within the terms of the rape shield statute. The testimony might have some small probative value in aid of the theory that the victim sexually propositioned Kelly, but the legislature has made the determination that evidence of prior sexual history, though arguably relevant to issues such as consent, is not admissible except for three strictly limited purposes. I.C. § 35–37–4–4(b)(1), (2), and (3). The testimony which Kelly offered does not fall into any of these three exceptions, and we may not graft additional exceptions onto the statute.

Kelly next argues that the trial court committed fundamental error by failing to instruct the jury as to the elements of deviate sexual conduct because the jury instructions concerning the elements of the offense did not parrot the language of the charging information. We reject this argument both because Kelly has waived it and because the trial court's instructions on the elements of the offense were sufficient.

A criminal defendant waives the right on appeal to complain that trial court's instructions were incomplete or otherwise defective unless the defendant tendered correct instructions on the disputed issue. *Clemons v. State* (1981), Ind., 424 N.E.2d 113, 119. This rule applies even where the defendant complains that the trial court erroneously or incompletely instructed the jury on the elements of the

charged offense. *See, e.g., Kiper v. State* (1983), Ind., 445 N.E.2d 1353, 1359–1360. Here, Kelly did not tender an instruction which defined the elements of the offense in the manner which he now claims is proper. He has, therefore, waived the right to assert in this court that the trial court's instructions were erroneous.

Even had Kelly not waived this issue, we would affirm. Kelly asserts that the trial court erred because it did not instruct the jury that it "had to be convinced beyond a reasonable doubt that the Defendant, knowingly caused [the victim] to perform deviate sexual conduct, and *additionally* that said deviate conduct involved [the victim's] mouth and the penis of Kelley L. Kelly." (Appellant's Brief, p. 15) (emphasis in original). In support of this assertion, he quotes the following language from our supreme court's decision in *Abner v. State* (1986), Ind., 497 N.E.2d 550, 553:

> In a criminal action, the facts upon which the action is claimed to exist are those facts which constitute the essential elements of the crime charged. These elements and the nature of the offense must be set out in the information.

▮ The quoted language does not mean that the trial court's jury instructions must recite the factual allegations of the charging instrument. *Abner* only stands for the proposition that the prosecution may not amend a charging information in a manner which materially changes the factual allegations which form the basis of the theory of prosecution. 497 N.E.2d at 555. It does not stand for the proposition that the jury instructions on the elements of the charged offense must include specific factual allegations.

While we have not found an Indiana case which has explicitly addressed the question of whether the trial court's instructions must contain the factual allegations of the charging instrument, we have found persuasive federal precedent holding that the instructions need not parrot the factual allegations of the charging instrument. In *United States v. Williams* (7th Cir.1986), 798 F.2d 1024, the seventh circuit rejected the defendants' argument that the trial

court's instructions were defective because they did not repeat the paragraphs of the indictment which charged the specific acts of the alleged conspiracy. The court wrote:

> In its instructions to the jury, the trial court did not submit the seven unnumbered paragraphs [of the indictment] as elements of the conspiracy charge. Instead, the court gave as an overarching charge its instruction number 20:
>
>> In order to establish the offense of conspiracy, the government must prove these elements beyond a reasonable doubt:
>> 1. That the alleged conspiracy existed, and
>> 2. That a defendant knowingly and intentionally became a member of that conspiracy.
>
> The defendants claim that the instruction is erroneous because it omitted essential elements of the charge. We find, however, that the seven unnumbered paragraphs do not constitute essential elements of the conspiracy charged and that instruction 20, along with several other instructions, adequately charged the jury.
>
> \* \* \* \* \* \*
>
> The trial court's instructions in this case clearly contained the essential elements of a section 846 conspiracy charge—the existence of an agreement among individuals to intentionally commit offenses under the Act. Not only did the trial court instruct the jury on these elements in instruction 20, but it also gave instructions defining the conspiracy and clarifying the jury's task:
>
> \* \* \* \* \* \*
>
> In light of the above, we find that the trial court did not omit any of the essential elements of the charge from the jury instructions.

*Williams,* 798 F.2d at 1032–1033.

▮ It may be that the trial court's instructions would have been better had the court framed the instructions in the particular language that the state used when it charged Kelly. Even so, the in-

structions as given are not cause for reversal because the trial court is not required to give the best possible instructions, but only ones which adequately and correctly state the law. *Captain & Co. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88, 97 (*citing Miller v. State* (1977), 266 Ind. 461, 364 N.E.2d 129). Instructions are to be read as a whole, not as single units, and a single instruction need not contain all the applicable law. *Hurt v. State* (1991), Ind., 570 N.E.2d 16, 18. Here, the court's instruction number 12 informed the jury that, in order to prove that Kelly had committed the crime of criminal deviate conduct, the state had to prove beyond a reasonable doubt that he: 1) knowingly or intentionally; 2) caused another person to perform deviate conduct when; 3) the other person was compelled by force or imminent threat of force. (Record, p. 56). Instruction number 13 informed the jury that deviate sexual conduct is defined as "an act of sexual gratification involving a sex organ of one person and the mouth or anus of another person." (Record, p. 57). These instructions, taken together, adequately and correctly state the elements of the offense of criminal deviate conduct, and the trial court was not required to give any further instructions on the elements.

 Kelly also argues that the evidence was insufficient to support his conviction because only the victim testified as to the actual contact between Kelly's penis and the victim's mouth. When we review the evidence supporting a conviction, we may not reweigh the evidence or judge the credibility of the witnesses. *Washington v. State* (1982), Ind., 441 N.E.2d 1355, 1358. Where the evidence is in conflict, we are bound to view only that evidence which is most favorable to the verdict and judgment of the trial court. *Id.* If there is substantial evidence supporting the judgment, we must affirm. *Hutchinson v. State* (1985), Ind., 477 N.E.2d 850.

 There was, in addition to the testimony of the victim, other testimony that Kelly boasted, after finishing with the victim, that the victim had given him a "good blow job" and asked if "anybody else" wanted oral sex from the victim. The evidence was sufficient to sustain the conviction.

 Kelly finally argues that, in a variety of instances, he was denied effective assistance of counsel at trial. When we review a claim of ineffective assistance of counsel, we are charged with determining whether counsel rendered "reasonably effective assistance" to the defendant. *Burr v. State* (1986), Ind., 492 N.E.2d 306, 307–308. The defendant has the burden to show strong and convincing evidence to overturn the presumption of competence. *Burr*, 492 N.E.2d at 308 (*citing Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674). We engage in a two-step analysis. We first determine whether the acts or omissions of counsel were outside the wide range of professionally competent assistance. *Sparks v. State* (1986), Ind., 499 N.E.2d 738, 739. If so, we must then determine whether such acts or omissions prejudiced the defendant. *Sulie v. State* (1988), Ind., 522 N.E.2d 380. Prejudice exists where there is "a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Smith v. State* (1987), 511 N.E.2d 1042, 1043, (quoting *Strickland*, 466 U.S. at 695, 104 S.Ct at 2068, 80 L.Ed.2d at 698). Our scrutiny is deferential and should not be distorted by hindsight; "[i]solated poor strategy, experience, or bad tactics" do not imply ineffectiveness. *Burr*, 492 N.E.2d at 308.

 Here, Kelly identifies several instances in which he alleges his counsel was ineffective. He first claims that his trial counsel failed to investigate his claim that he had chlamydia, a sexually transmitted disease, at the time he assaulted the victim. He argues that evidence that he had the disease would bolster the inference that no sexual contact took place between him and the victim if the victim did not have the disease.

Kelly first mentioned the chlamydia theory to the court at the sentencing hearing. His counsel then told the court:

I did talk with the jail personnel about his medical provisions prior to trial in this case and could not obtain any conformation [sic] of any sort of venereal disease which he had at the time of this incident, prior to, or after.

(Record, p. 465). Thus counsel made it clear that he had investigated the chlamydia theory and found that there were no facts to support it. We find that counsel was not ineffective in this instance.

 Kelly claims that counsel was ineffective in failing to preserve his challenge to the rape shield law. Even assuming that Kelly's trial counsel failed to preserve the challenge to the application of the statute in this case, Kelly has failed to demonstrate any prejudice because, in light of our holding that the trial court correctly applied the statute, the result on appeal would not be different. *See, Miller v. State* (1989), Ind., 541 N.E.2d 260, 262. Kelly has stated no ground for reversal here.[1]

■ Kelly argues that trial counsel rendered ineffective assistance by failing to subpoena the jail employees who were on duty on the night of the assault. This does not constitute ineffective assistance, however, because the decision whether to call particular witnesses is a matter of trial strategy which we will not second guess. *Rentas v. State* (1988), Ind.App., 519 N.E.2d 162, 165 (*citing Grigsby v. State* (1987), Ind., 503 N.E.2d 394, 397). Kelly has stated no ground for reversal here.

■ Finally, Kelly asserts that trial counsel was ineffective because he did not object when the victim's probation officer, who was a material witness in the prosecution's case, was assigned to prepare the presentence report following Kelly's conviction. While we agree that the better practice would have been to object to that officer preparing the report, we can find no prejudice stemming from the officer's report. She made no recommendation con-

cerning the sentence to be imposed. She made no prejudicial comment in the report. In his brief, Kelly does not identify any specific prejudice stemming from the report. Instead, he asserts that it is obvious that she felt responsible for placing the victim in a situation where he was subject to an assault. Such a general statement is not sufficient evidence of prejudice.

We have found no merit in any of Kelly's allegations of error, and we affirm.

AFFIRMED.

RUCKER and MILLER, JJ., concur.

---

1. We reach the same conclusion with regard to Kelly's assertion that trial counsel was ineffective for failing to tender an instruction on the elements of the offense which was framed in the language of the indictment. As we noted above, the trial court's instruction on the elements of the offense was proper, and we must therefore conclude that trial counsel was not ineffective for failing to tender the proposed instruction.