Ricky D. ALLEN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 92A03–9110–CR–00309.

Court of Appeals of Indiana,
Third District.

July 28, 1992.

Richard J. Thonert, Romero & Thonert, Fort Wayne, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

HOFFMAN, Judge.

Appellant-defendant Ricky D. Allen appeals his convictions for theft, a Class D felony, and contributing to the delinquency of a minor, a Class A misdemeanor, as well as the habitual offender enhancement.

Three issues are raised for review:

(1) whether there was sufficient evidence to support the theft and contributing to the delinquency of a minor convictions;

(2) whether defendant was denied his right to confrontation; and

(3) whether there was sufficient evidence to support the habitual offender enhancement.

Defendant argues that there was insufficient evidence to support his convictions for theft and contributing to the delinquency of a minor. When reviewing a claim of insufficient evidence, this Court neither reweighs the evidence nor rejudges the credibility of the witnesses. Rather, it looks only to the evidence favorable to the judgment and any reasonable inferences therefrom. If there was sufficient evidence of probative value to support a finding of guilt beyond a reasonable doubt, this Court will affirm the conviction. *Wormbly v. State* (1990), Ind.App., 550 N.E.2d 95, 97.

Count I of the charging information alleged that defendant "did knowingly and intentionally exert unauthorized control over property of Rebecca Ball, d/b/a Our Compliments Gift and Craft Shop, to wit: one (1) porcelain figure, with intent to deprive Rebecca Ball of the value and use thereof." Count II of the charging information alleged that defendant "did knowingly and intentionally aid Joshua Stanley, Shane Bird and Ben Sexton, individuals under the age of eighteen (18) years, to commit a delinquent act, to wit: Theft."

Shane Bird, a fourteen year old, testified that he was at Pat Messenger's house with two of his friends, Ben Sexton and Josh Stanley, when defendant asked him if he wanted to go to the gift shop (Our Compliments Gift and Craft Shop). Defendant told Shane he was going to the shop because "he needed the money." Defendant and Shane went to the shop. They were in the shop ten or fifteen minutes when defendant said, "Let's go." Shane did not see defendant purchase anything inside the store. Approximately one block from the store, defendant pulled a porcelain figurine out of his pocket to show Shane.

Defendant and Shane returned to Pat's house. They went into the kitchen where Pat and the other two boys, Josh and Ben, were. Defendant placed the figurine on the table.

Ben Sexton, a twelve year old, testified that Pat asked him to go to the gift shop to obtain a sack. He went to the gift shop, obtained the sack, and returned to Pat's house. Ben saw Pat write a note addressed to Our Compliments. Pat took the figurine, wrapped it in tissue paper, and placed it into the sack which Ben had given her. Pat then gave the sack and the note to Josh. Josh left and went to the gift shop.

The note asked for a refund for the figurine. Josh returned later with the figurine. Pat wrote another note and sent Josh once again to the gift shop to obtain a refund for the figurine. Once again Josh returned to the house with the figurine. Pat wrote a third note to the gift shop and sent Josh with it. Again Josh returned; however, this time the police were with him.

Rebecca Ball, the owner of Our Compliments Gift and Craft Shop, testified that the figurine, a Precious Moments figurine, had come from her store. She recognized the handwritten price tag on the figurine. She testified that it is store procedure to remove the price tag and place the figurine in a special box before releasing it to a customer. The figurine brought to the store by Josh had the handwritten price tag still in place and was not in a box.

This evidence, although circumstantial, is sufficient to prove that defendant committed theft of the figurine. Likewise, this evidence was sufficient to prove defendant's contributing to the delinquency of the three children by involving them in the whole scheme.

■ Defendant argues that the admission of State's Exhibits Nos. 2, 3, and 4, Pat Messenger's handwritten notes to the gift shop, constituted reversible error since he was denied an opportunity to confront and cross-examine Pat Messenger. Messenger, the co-defendant, elected not to testify at the trial. The trial court ruled that the evidence was not hearsay but evidence of the scheme to commit theft. The evidence was admitted as part of the res gestae.

Res gestae means "things done" and includes acts, statements, occurrences, and circumstances that are so closely connected to the occurrence as to be part of it. *Cary v. State* (1984), Ind., 469 N.E.2d 459, 462. The term res gestae is used in two different manners. First, it is an exception to the hearsay rule and admissible as a spontaneous or excited utterance. *Riley v. State* (1987), Ind., 506 N.E.2d 476, 479. Res gestae also applies to statements and conduct contemporaneous with the incident

in question. In this latter context, the statements are not hearsay at all because they are not offered to prove the truth of the assertions contained therein but rather for the purpose of completing the story of the incident. *Id.* "Admission of evidence under either meaning of res gestae is within the sound discretion of the trial court." *Id.*

The letters were admitted to complete the story of the theft planned by Pat Messenger and defendant. As such, these letters were not hearsay. It was within the trial court's discretion to allow the letters to be admitted.

Since these letters were properly admissible as part of the res gestae, defendant was not denied his right to confrontation. "The Confrontation Clause, like the hearsay rule, is not concerned with statements that are not offered to prove the truth of the matter asserted." *Kindred v. State* (1988), Ind., 524 N.E.2d 279, 300–301.

■ For defendant's last issue, he complains that the State failed to prove that the second felony was committed after sentencing upon the first felony in the habitual offender proceeding. The State fails to acknowledge or address this argument.

In *McCombs v. State* (1989), Ind., 536 N.E.2d 277, the court stated that the State, in proving that a defendant has two prior unrelated felonies to support an habitual offender enhancement, must show that the second offense was committed after sentencing upon the first and that the principal offense upon which the enhanced punishment is being sought was committed after sentencing upon the second. *Id.* at 279, 536 N.E.2d 277. The State, in *McCombs*, presented evidence showing that defendant had a conviction for first-degree burglary on September 5, 1975, and a conviction for burglary in November 1978. This evidence did not disclose precisely when the burglary resulting in conviction in 1978 was committed. Therefore, the determination of habitual offender status was reversed. *Id.*

Here, the State presented evidence that defendant was sentenced in October 1983

for burglary, a Class C felony. Thereafter, the State presented evidence that defendant had been found guilty of a felony in California in June 1986. However, the State failed to present evidence of the date of the commission of the felony in California. Therefore, the State failed to meet its burden of proving the necessary sequence of events to support an habitual offender enhancement. The defendant's habitual offender status is reversed.

Affirmed in part and reversed in part.

GARRARD and STATON, JJ., concur.