**Mark Steven DOUGLAS [1],**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 45A05–9212–PC–439.**

Court of Appeals of Indiana,
Fifth District.

May 31, 1994.

---

1. We note that Douglas changed his name by court order on September 20, 1992, to Shaka Adiyia Shakur. Because the briefs on appeal refer to the defendant as Mark Douglas, we do the same here.

Craig Jago Beauchamp, Chicago, IL, John G. Warne, Indianapolis, for appellant.

Pamela Carter, Atty. Gen. of Indiana, Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

BARTEAU, Judge.

Mark Douglas appeals the denial of his petition for post conviction relief, raising the following issues:

1. Whether the post-conviction relief court erred in finding Douglas's petition barred by laches;

2. Whether the post-conviction relief court erred in finding that the trial court sufficiently instructed the jury on the element of intent;

3. Whether the post-conviction relief court erred in finding that the trial court's failure to properly instruct the jury on the defense of voluntary intoxication was harmless;

4. Whether the post-conviction relief court erred in finding that the trial court properly admitted evidence of Douglas's prior incarceration at Boy's School;

5. Whether the post-conviction relief court erred in finding that the trial court properly instructed the jury on the State's burden of proof and the presumption of innocence;

6. Whether the post-conviction relief court erred in finding that Douglas received effective assistance of trial and appellate counsel; and

7. Whether Douglas received ineffective assistance of counsel at the hearing on his post-conviction relief petition.

We affirm the denial of Douglas's petition for post-conviction relief.

*FACTS*

The facts were succinctly stated by the supreme court in Douglas's direct appeal:

On November 13, 1982, appellant and an accomplice went to Lowell Fitch's home and asked to see Chris Hych, the son of Fitch's cohabitating fiancee. When Fitch responded that Chris did not live there anymore, appellant pulled out a sawed-off shotgun. Even though Fitch tried to slam the door shut, appellant managed to fire two shots. Fitch received injuries to his right hand and left shoulder.

*Douglas v. State* (1985), Ind., 481 N.E.2d 107, 109. Douglas and co-defendant Kevin Morrison had discussed a plan to take things from the Fitch home because Morrison, a friend of Chris Hych, knew Fitch had some "nice things." Douglas's conviction of attempted robbery was affirmed on August 6, 1985.

Douglas filed his petition for post-conviction relief in September, 1986. After several amendments, a hearing was held on the petition on May 13, 1992. The post-conviction relief court ("PCR court") denied the petition on August 24, 1992, adopting the State's proposed findings of fact and conclusions of law. Douglas appealed and this court heard oral argument on March 23, 1994.

## STANDARD OF REVIEW

Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1, Section 5; *St. John v. State* (1988), Ind.App., 529 N.E.2d 371, 374, *trans. denied.* Pursuant to P–C.R. 1, Section 6, the PCR court entered findings of fact and conclusions of law. Thus, we cannot affirm the judgment on any legal basis; rather, we must determine whether the PCR court's findings are sufficient to support the judgment. *Vanderburgh County Board of Commissioners v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665, *trans. denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions of law entered on the findings. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320, *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

## LACHES

Douglas first raises the issue whether the PCR court erred in finding that his petition for relief was barred by laches. The PCR court found that Douglas was aware of post-conviction relief and the Public Defender's Office in 1985, because Douglas wrote a letter to the trial court requesting a copy of his transcript on September 19, 1985, so that he could begin "preparing adequate post-conviction action." The PCR court also found that Douglas filed his petition on September 25, 1986, and that Douglas's attorney filed three amendments and substituted every issue alleged in the original petition. "Thus, the delay in filing a petition has been from petitioner's conviction in 1983 until 1992." R. 99–100. The PCR court found the delay unreasonable. The PCR court also found that the State had been prejudiced by the delay because the State was not able to locate Donna Evans and because Lowell Fitch had died.

"For laches to bar relief, the State must prove by a preponderance of the evidence, first, that the petitioner unreasonably delayed in seeking relief and second, that the State has been prejudiced by the delay." *Holland v. State* (1993), Ind.App., 609 N.E.2d 429, 430–431 (quoting *Perry v. State* (1987), Ind., 512 N.E.2d 841, 843, *reh'g denied*).

[Laches] is the neglect for an unreasonable length of time, under circumstances permitting diligence, to do what in law should have been done. It is an implied waiver arising from knowledge of existing conditions and an acquiescence in them, the neglect to assert a right, as taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to the other party and thus acting as a bar in a court of equity.

*Twyman v. State* (1984), Ind., 459 N.E.2d 705, 712 (quoting *Frazier v. State* (1975), 263 Ind. 614, 616–617, 335 N.E.2d 623, 624–625).

The PCR court erred in concluding that laches barred relief on Douglas's petition. Within one month of the supreme court's decision affirming Douglas's direct appeal, Douglas requested a transcript so that he could begin preparing a PCR petition. It took several months for him to finally receive the transcript and he still filed his petition a mere one year after his conviction had been affirmed. The PCR court appeared to find relevant, and the State at oral argument focused on, the delay between the filing of the petition and the hearing on the petition. We have found no cases, and

the State directs us to none, that consider the delay between the filing of the petition and the hearing on the petition as the relevant time period for purposes of laches.

The PCR court found that Douglas was aware of his right to post-conviction relief in 1985 when he requested his transcript. Less than a year after receiving the transcript Douglas filed his PCR petition. From that time until 1991, Douglas was represented by the State Public Defender's Office. After waiting more than four years for action on his petition, Douglas hired private counsel to proceed with his petition. We refuse to penalize Douglas for the delays caused by the Public Defender's Office. One arm of the State (the Prosecutor) may not take advantage of a delay created by another arm of the State (the Public Defender) to the detriment of the defendant. While we recognize the burdensome caseload of the Public Defender's Office and the high turnover of attorneys resulting in delays, as between a defendant and the State, the defendant will not be penalized for the delays. The PCR court's findings do not support the conclusion that Douglas unreasonably delayed seeking relief. Because we determine that the PCR court erred in finding laches on the basis of an unreasonable delay, we need not discuss whether the PCR court correctly found that the State was prejudiced by the delay.

## INTENT INSTRUCTION

■ Douglas next argues that the PCR court erred in finding that the trial court adequately instructed the jury on the element of intent. At trial, the jury was given the following instructions:

### INSTRUCTION NO. 3

Robbery is defined in Indiana by statute as follows:

A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) by using or threatening the use of force on any person;

(2) by putting any person in fear commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon, and a Class A felony if it results in either bodily injury or serious bodily injury to any other person.

### INSTRUCTION NO. 4

A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscience objective to do so. A person engages in that conduct "knowingly" if, when he engages in that conduct, he is aware of a high probability that he is doing so.

### INSTRUCTION NO. 5

ATTEMPT: A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime charged.

Trial R. 55–57. Douglas argues that the jury was not instructed that in order to convict him of attempted robbery, he must have acted with the specific intent to rob Fitch. To avoid waiver because no objection was made and no alternative instructions were tendered at trial, Douglas argues that the error is fundamental and also argues that his trial and appellate counsel were ineffective for failing to preserve the issue.

Specifically, Douglas argues: "Since the term 'culpability' used in Instruction No. 5 does not require 'specific intent' but allows a conviction based upon acts knowingly committed, the court failed to instruct the jury on an essential element of an attempt crime which the State had the burden of proving beyond a reasonable doubt." Appellant's Brief, p. 23. Although all of the cases cited by Douglas in support of his argument addressed the specific intent instruction issue in the context of attempted murder, the Indiana supreme court addressed the necessity of a specific intent instruction for attempted burglary in *Alexander v. State* (1988), Ind., 520 N.E.2d 99. The court accepted without discussion that it was fundamental error to fail to instruct the jury that the specific intent to commit the crime of

burglary was an essential element of attempted burglary. *Id.* at 100. However, the court, with Justice DeBruler dissenting, determined that the jury had been adequately instructed that to be guilty of attempted burglary, the defendant must have had the specific intent to commit the burglary. *Id.* The instructions given in *Alexander* are nearly identical to those given here. The jury was instructed on the definition of burglary, that in an attempted burglary proof is required that the person was "acting with the culpability required for commission of the crime," and that to convict the defendant,

> the State must have proven beyond a reasonable doubt each of the following elements:
>> (1) That the defendant
>> (2) knowingly and intentionally
>> (3) engaged in conduct as described in the Information and that such conduct was a substantial step toward the commission of the crime of Burglary.

*Id.* The jury was also instructed that the State must prove every element of each offense. The court concluded: "When all instructions are taken as a whole, there can be no doubt the jury was fully informed that in order to be guilty of attempted burglary the appellant must have had specific intent to commit the burglary." *Id.* Justice DeBruler dissented, pointing out that in *Smith v. State* (1984), Ind., 459 N.E.2d 355, the court "condemned an instruction such as this because it purported to define the elements of an attempted felony charge and failed to include, as an element, the accompaniment of the step taken with the intent to commit the specific felony." *Alexander,* 520 N.E.2d at 101 (DeBruler, J. dissenting). However much we might agree with Justice DeBruler, we are bound by the majority opinion. Finding no significant difference between the instructions given in Alexander and the instruction given here, we must conclude that the jury was adequately instructed at Douglas's trial on the element of specific intent.

Douglas appears to make an argument that the evidence at trial indicates that Douglas did not have the specific intent to commit robbery. However, in Douglas's direct appeal the supreme court found that the evidence established the intent to commit robbery. Thus, that issue has been decided and *res judicata* prevents us from reviewing it again.

### INTOXICATION DEFENSE

At Douglas's trial, the trial court read to the jury the following instruction:

#### INSTRUCTION NO. 10

There was some evidence introduced during the trial indicating that the defendants may have been intoxicated at the time of the offense charged in the Information.

You are instructed that voluntary intoxication is not a defense to the charge of Attempted Robbery or the lesser included offense of Battery, a class C felony.

T.R. 62.

Douglas argues that it was error for the court to give this instruction and that the court should have given the jury an intoxication defense instruction. At the time the jury was instructed in Douglas's trial, July 8, 1983, the instruction given by the trial court was a correct statement of the law. At that time, Ind.Code 35–41–3–5(b) provided that voluntary intoxication was a defense "only to the extent that it negates an element of an offense referred to by the phrase 'with intent to' or 'with an intention to.'" *See Pavey v. State* (1986), Ind., 498 N.E.2d 1195, 1196. Subsequent to Douglas's trial, the supreme court held that I.C. 35–41–3–5(b) was "void and without effect," and that a defendant could offer a defense of voluntary intoxication to any crime. *Terry v. State* (1984), Ind., 465 N.E.2d 1085, 1088. In *Pavey,* the court applied the holding in *Terry* retroactively and reversed the defendant's conviction where the trial court refused a voluntary intoxication defense and the evidence supported giving the instruction. 498 N.E.2d at 1197. Douglas asks for the same treatment here. At trial, minimal evidence was introduced regarding Douglas's intoxication. In an attempt to introduce additional evidence at the PCR hearing, Douglas argued that his counsel was ineffective for not introducing evidence of Douglas's intoxication. The PCR court allowed Douglas to present further evi-

dence and found that the evidence did not support giving a voluntary intoxication instruction.

The PCR court erred in allowing Douglas to present the evidence. Trial counsel was not ineffective for failing to object to the trial court's instruction and failing to present the evidence of intoxication at trial because at that time the defense was not available. An attorney is not required to prophesy future court rulings and act in accordance with them. *McChristion v. State* (1987), Ind., 511 N.E.2d 297, 302. However, we agree with the PCR court that even considering the evidence Douglas introduced at the PCR hearing, the evidence does not support a voluntary intoxication instruction. An adequate evidentiary basis for the instruction exists "where the evidence of intoxication, if believed, is such that it could create a reasonable doubt in the mind of a rational trier of fact that the accused entertained the requisite intent." *Weyls v. State* (1992), Ind.App., 598 N.E.2d 610, 615, *trans. denied* (quoting *Gibson v. State* (1987), Ind., 516 N.E.2d 31, 32). "As a general proposition, a defendant should not be relieved of responsibility when he is able to devise a plan, operate equipment, instruct the behavior of others or carry out acts requiring physical skill." *Terry,* 465 N.E.2d at 1088.

The evidence presented at the trial and at the PCR hearing is that Douglas showed up with three other young men at Morrison's house a few hours before they went to Fitch's home. Douglas and the others had a one-half quart bottle of whiskey, which was partially empty when they arrived at Morrison's. All five of the boys together drank more than half of the bottle. The boys also ingested some valiums and smoked marijuana. Morrison testified that Douglas was staggering and slurring his speech, but they were all able to walk to Fitch's house. In light of the fact that Douglas was able to knock on Fitch's door and ask for Chris Hych, as planned, to fire off two shots at Fitch while Fitch attempted to close the door, and then to have the presence of mind to hide the shotgun and make his way back to Morrison's home, the PCR court correctly concluded that the evidence of intoxication could not create a reasonable doubt that Douglas entertained the requisite intent.

In a related vein, Douglas argues that the trial court erred in not finding that his intoxication was a mitigating factor at sentencing. However, this argument was not raised in Douglas's PCR petition, nor argued at the PCR hearing. Thus, the issue has been waived. *Badelle v. State* (1983), Ind., 449 N.E.2d 1055 (defendant waived consideration of issue raised for first time on appeal). Further, the trial court has no obligation to find mitigating factors. *Middlebrook v. State* (1992), Ind.App., 593 N.E.2d 212, 214.

## JUVENILE RECORD

Douglas argues that the PCR court erred in concluding that the trial court properly admitted evidence that Douglas had been in Boys School prior to the charge for which he was being tried. At trial, statements by Douglas and his co-defendant, Kevin Morrison, were admitted that contained references to the fact that Douglas and Morrison met at Boys School and there discussed the plan to steal things from the home of Chris Hych. The court also allowed Morrison to make references to Douglas's incarceration at Boys School while Morrison was testifying. Once again, Douglas's trial counsel did not object to the evidence so, to avoid waiver, Douglas contends his trial and appellate counsel were ineffective for failing to preserve the issue.

The PCR court found that the references to Boys School were properly admitted as part of the res gestae of the crime because that is where the crime was planned, and, even if admission of the evidence was error, it was harmless because the evidence at trial of Douglas's guilt was overwhelming.

Juvenile records are not admissible at trial for impeachment purposes. *Boyko v. State* (1991), Ind.App., 566 N.E.2d 1060, 1063. In *Boyko,* the State was permitted to introduce several letters written by the defendant to a friend he had met at a juvenile detention facility. One of the letters made a reference to the defendant going to court with his parole officer and a counselor from Boys School. During direct examination, the friend was asked if he knew why the defen-

dant was at the detention facility and he responded that he did not know. This court held that admission of the evidence was not improper because it was not introduced for impeachment purposes; the letter was introduced because it contained admissions regarding the crime for which defendant was being tried. We went on to say that even if admission of the evidence was improper, the error was harmless because substantial independent evidence supported the conviction and there was no substantial likelihood that the questioned evidence contributed to the conviction. *Id.* at 1063. It was never indicated why the defendant was in the detention facility or Boys School. Further, from the evidence, the jury could have concluded that the defendant was in the detention facility for the offense for which he was being tried and the reference to Boys School was only in passing.

 Here, the fact that Douglas had been in Boys School was not merely a passing reference and it was clear that he had been in Boys School before the commission of the crime for which he was being tried. Thus, although the evidence was not being admitted to impeach Douglas, it was erroneously admitted because it left the jury with the clear impression that Douglas had committed prior crimes. Nor do we believe the evidence was properly admitted as part of the res gestae of crime. It was significant that Douglas and Morrison had discussed and planned the crime in advance; it added nothing for the jury to know *where* the discussions had occurred. However, the PCR court properly found that the error was harmless. Not only did both Fitch and Evans identify Douglas as the person who shot Fitch, Morrison also identified Douglas and Douglas himself confessed in a statement to police that was admitted at trial. Any error in the admission of evidence referring to Boys School was harmless.

### *PRESUMPTION OF INNOCENCE*

 Douglas argues that the PCR court erred in finding that the trial court's instruction to the jury on reconciling the evidence did not undermine the presumption of innocence nor shift the burden of proof to the defendant. The following instructions were given to the jury:

### *INSTRUCTION NO. 1*

To the Information in this case, the Defendants have entered a plea of not guilty which makes it *incumbent upon the State of Indiana to prove to your satisfaction beyond a reasonable doubt, each and every material allegation* of said Information constituting the particular crime charged, or the lesser included offense therein.

*The burden of proof in a criminal case is upon the State alone and it never shifts to the Defendant.*

[T.R. 54, our emphasis.]

### *INSTRUCTION NO. 11*

The fact that an information has been filed charging the Defendants with the commission of a crime does not give rise to any presumption of guilt and is not to be considered by the Jury as any evidence of guilt. On the contrary, it is a fundamental concept in our law that the Defendants come into court *presumed to be innocent of the charge, and this presumption remains throughout the trial of the case until and unless it is overcome by competent proof of guilt beyond a reasonable doubt.*

Since the Defendants are *presumed to be innocence* [sic], they are not required to present any evidence to prove their innocence, or to prove or explain anything. If at the conclusion of the trial there remains in your mind a reasonable doubt concerning the Defendants' guilt, you must find them not guilty. *Every reasonable doubt arising from the evidence, the lack of evidence or a conflict in the evidence in this case must be construed in favor of the Defendants.*

[T.R. 63, our emphasis.]

### *INSTRUCTION NO. 18*

You, the jury, are the sole judges of the credibility of the witnesses and of weight to be given to their testimony. You should reconcile the evidence in this case upon the theory that each and every witness has spoken the truth, if you can reasonably do

so. You should not disregard the testimony of any witness without a reason and without careful consideration. If, however, you find a conflict in the testimony that you cannot reconcile, you may choose whom you will not believe.

\* \* \* \* \* \*

T.R. 70.

Douglas contends that Instruction No. 18 created a mandatory evidentiary presumption in favor of the State because "the overwhelming number of witnesses were state witnesses. Such an instruction also undermined the defendant's presumption of innocence and unreasonably shifts the burden from the State to the defendant. The jury could have interpreted the instruction to mean that as long as the State's witnesses sound 'reasonable' and unless the defense presents some evidence to prove otherwise, the jury is authorized to convict." Appellant's Brief, p. 42. Douglas's trial counsel did not object to Instruction No. 18; thus, to avoid waiver, Douglas also argues that his trial and appellate counsel were ineffective for failing to preserve the error.

We find no error in the instructions given. Similar instructions based on the Indiana Pattern Jury Instruction have been approved by our supreme court, *St. John v. State* (1988), Ind., 523 N.E.2d 1353, and this court. *Adams v. State* (1989), Ind.App., 542 N.E.2d 1362. In fact, in *St. John*, where almost the identical instruction was given and the trial court also instructed the jury that the State had to prove all elements of the crime beyond a reasonable doubt and that the State had to overcome the presumption of innocence beyond a reasonable doubt, the court stated, "These instructions taken together correctly state the law and do not derogate the presumption of innocence." *Id.* at 1358. At Douglas's trial the jury also was instructed that the State had the burden of proof beyond a reasonable doubt on each element of the crime and that the burden never shifted to the defendant. We are not persuaded by Douglas's argument that the instructions derogated the presumption of innocence or shifted the burden of proof to the defendant. The PCR court did not err in finding that the trial court properly instructed the jury.

## ASSISTANCE OF TRIAL AND APPELLATE COUNSEL

Douglas argues that the PCR court erred in finding that he was not denied effective assistance of trial and appellate counsel. The PCR court concluded that Douglas did not show that his counsel had been ineffective because neither trial nor appellate counsel testified at the PCR hearing. Thus, Douglas did not establish that counsels's actions were other than strategy decisions. The PCR court also concluded that each of the complained-of errors were meritless, and thus trial and appellate counsel were not ineffective.

 Reversal for ineffective assistance of counsel is appropriate only in cases where a defendant shows both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced the defendant as to deprive him of a fair trial. *Bellmore v. State* (1992), Ind., 602 N.E.2d 111, 123 (citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674). A claim of ineffective assistance must identify the particular claimed errors. It shall be strongly presumed that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. *Id.*

 The PCR court erred in finding that Douglas failed to show his trial and appellate counsel were ineffective merely because they did not testify at the PCR hearing, but the PCR court correctly found that counsel were not ineffective because Douglas did not show that he was prejudiced by the alleged ineffectiveness. As we discussed above, Douglas did not show any prejudice from alleged failings by counsel to preserve the issues regarding specific intent instruction, voluntary intoxication instruction, juvenile record, and burden of proof and presumption of inno-

cence instruction. Thus, neither trial nor appellate counsel were ineffective on those points.

■ Douglas also argues that trial counsel was ineffective for failing to sever his trial from that of co-defendant Morrison, or to at least "redact the information from the statements given by both the defendants cross-implicating the other." Appellant's Brief, p. 49. Douglas has not shown how he was prejudiced by the implicating information in Morrison's statement where Douglas implicated himself in his own statement. Indeed, in the opinion on Morrison's direct appeal the supreme court found no reversible error in the consolidation of the trials or in introducing the implicating statement of the co-defendant where the defendant's own statement made the same admissions. *Morrison v. State* (1987), Ind., 516 N.E.2d 14, 15–16. Thus, although the better practice would have been for trial counsel to have the statement redacted, Douglas has not shown he was prejudiced by counsel's failure to do so. The PCR court correctly found that Douglas was not deprived of effective assistance of trial or appellate counsel.

### EFFECTIVE PCR COUNSEL

■ Lastly, Douglas contends that he received ineffective assistance of counsel at his PCR hearing because counsel did not present testimony from Douglas's trial counsel to show trial counsel was ineffective.

The right to counsel in post-conviction proceedings is guaranteed by neither the Sixth Amendment of the United States Constitution nor art. 1 § 13 of the Constitution of Indiana. A petition for post conviction relief is not generally regarded as a criminal proceeding and does not call for a public trial within the meaning of these constitutional provisions.... We therefore apply a lesser standard responsive more to the due course of law or due process of law principles which are at the heart of the civil post-conviction remedy.... [I]f counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court, it is not necessary to judge his performance by the rigorous

standards set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

*Waters v. State* (1991), Ind., 574 N.E.2d 911, 911 (quoting *Baum v. State* (1989), Ind., 533 N.E.2d 1200, 1201). Moreover, because we have concluded that Douglas was not prejudiced by any errors his trial counsel might have made, we cannot say that PCR counsel was ineffective for not presenting the testimony of Douglas's trial counsel to show that trial counsel made errors.

### CONCLUSION

We reverse the PCR court's finding that Douglas's petition for post-conviction relief is barred by laches, and we affirm the PCR court's denial of relief on the merits.

BAKER, J., concurs in result with opinion.

RUCKER, J., dissents with opinion.

BAKER, Judge, concurring.

I concur in the majority opinion on all of the issues except for those involving Douglas' juvenile record. *See supra*, pp. 818–819, 820–821. First, Douglas waived any error by failing to object to the admission of the evidence. Notwithstanding waiver, the post-conviction court properly admitted the evidence that Douglas had been in Boys School under the res gestae exception. Res gestae includes acts and statements that are so closely connected to the crime as to be part of it. *Allen v. State* (1992), Ind.App., 596 N.E.2d 280, 282. Admission of evidence under res gestae is within the trial court's discretion. *Id.* In ruling on the relevancy of evidence, the trial court must balance the probative value of the evidence against its prejudicial impact. *Hunter v. State* (1991), Ind., 578 N.E.2d 353, 357.

Here, the evidence was not introduced for improper impeachment purposes, and was relevant to relate the planning of the commission of the crime which occurred while Douglas was at the Boys School. The probative value of this evidence outweighs the nominal prejudice arising from the fact that the jury learned that Douglas had been in

Boys School for his prior actions. The evidence was properly admitted.

Douglas' related argument that he received ineffective assistance of counsel on this issue likewise fails. Because the admission of the evidence indicating Douglas' juvenile record was proper as res gestae, his counsel was not deficient for failing to object to the evidence. Had counsel objected to the evidence of Douglas' juvenile record, the objection would have been denied.

I also disagree with the majority's analysis of ineffectiveness of counsel on the juvenile record issue, in that it fails to consider first whether counsel's performance was deficient. We presume counsel was competent. *Fugate v. State* (1993), Ind., 608 N.E.2d 1370, 1372. If the admission of the juvenile record evidence had been erroneous, counsel was not required to object and draw more attention to Douglas' prior juvenile record. Counsel did not testify at the post-conviction hearing; thus, we may infer that counsel would not have corroborated Douglas' allegations. *See Dickson v. State* (1989), Ind., 533 N.E.2d 586, 589. We will not speculate about a more advantageous strategy that could have been employed. *Fugate*, at 1373. I would not find Douglas' counsel's omission to be substandard had the evidence been inadmissible.

For the above-stated reasons, I concur in result on the issues concerning Douglas' juvenile record.

RUCKER, Judge, dissenting.

I dissent. I disagree with the majority's conclusion that the jury was properly instructed on the element of specific intent. I also disagree with the majority's conclusion that Douglas was not entitled to an instruction on the defense of intoxication.

I.

In support of its position that the jury instruction on attempted robbery was adequate, the majority cites *Alexander v. State* (1988), Ind., 520 N.E.2d 99, a case involving attempted burglary. Although there are no cases in Indiana concerning specific intent instructions in attempted robbery cases, I can discern no principled reason for the majority to seize on language in an attempted burglary case and apply it here. That is especially true when our supreme court has undertaken a thorough analysis of the specific intent element of a crime in another context, namely: cases involving attempted murder. In my view those cases are better reasoned and provide a more appropriate analogy to the case before us.

In *Zickefoose v. State* (1979), 270 Ind. 618, 388 N.E.2d 507, our supreme court held that there are two necessary elements in the crime of attempted murder: first, the defendant must have been acting with a specific intent to commit the crime, and second, he must have engaged in an overt act which constitutes a substantial step toward the commission of the crime. *Id.* at 510. When an instruction purports to set forth all of the elements of a crime necessary to a conviction, the instruction is fatally defective if a necessary element is omitted. *Duling v. State* (1976), 170 Ind.App. 607, 354 N.E.2d 286.

Citing the foregoing authority, our supreme court reversed the defendant's conviction for attempted murder in *Smith v. State* (1984), Ind., 459 N.E.2d 355, because the trial court failed to instruct the jury that it must find that the defendant had the specific intent to commit murder in order to be found guilty of attempted murder. The specific jury instruction at issue in *Smith* was as follows: "You are instructed that the essential elements of the crime of attempted Murder which the State of Indiana must prove beyond a reasonable doubt are the following: 1. That the [Defendant] knowingly, 2. Engaged in conduct that constituted a substantial step toward the commission of Murder." *Id.* at 357. Nowhere in the instruction was there a statement to the effect that if the defendant were to be found guilty of attempted murder, then there must first be a finding that when he engaged in the proscribed conduct, he intended to kill the victim. *Id.* at 358. The court observed:

Thus, we are left with instructions which would lead the jury to believe that the Defendant could be convicted of attempted murder if he knowingly engaged in conduct which constituted a substantial step toward the commission of murder.... An

instruction which correctly sets forth the elements of attempted murder requires an explanation that the act must have been done with the specific intent to kill.

*Id.* The offending instruction in that case is essentially the same as the one before us.

In *Abdul–Wadood v. State* (1988), Ind., 521 N.E.2d 1299, *reh'g denied,* our supreme court also reversed the defendant's conviction for attempted murder because the trial court failed to instruct the jury that specific intent to kill is a requisite element of the crime of attempted murder. The instruction involved in that case dictated: "To sustain the charge of attempted murder, the State must prove the following propositions: First: That the Defendant knowingly engaged in conduct against [the victim]. Second: That the Defendant's conduct against [the victim] constituted a substantial step toward the commission of the crime of murder." *Id.* at 1300. Citing *Smith v. State* (1984), Ind., 459 N.E.2d 355, the court held that the giving of the foregoing instruction was fundamental error and a conviction obtained thereby would be a gross miscarriage of justice. In so holding the court observed:

> The error in the instruction creates a serious risk of wrongful conviction. This instruction purports to set out the complete burden of the prosecution. It is an instruction, which when given at a trial, creates a moment of focus and special attention. The judge takes special care in reading it loudly and distinctly. The jury perceives its special and crucial character. Armed with the information in this instruction, the jury could rationally deem itself authorized to convict because it was convinced beyond a reasonable doubt that the accused deliberately engaged in cooperative conduct, in a series of developing events, which culminated in an enterprise carrying the death risk, even though there could have been no appreciation of that risk at the time of the cooperative conduct.

*Abdul–Wadood,* 521 N.E.2d at 1300–01.

In like fashion in *Jackson v. State* (1989), Ind., 544 N.E.2d 853, our supreme court reversed the defendant's conviction for attempted murder because of a faulty jury instruction. Again citing *Smith,* 459 N.E.2d at 357, the court noted that when an instruction purports to set forth all of the elements of the crime necessary for a conviction, the instruction is fatally defective if a necessary element is omitted. *Id.* at 854. The instruction given in that case was, "A person who knowingly or intentionally kills another human being commits a murder, a felony. To convict the defendant of attempt, the state must have proved each of the following elements: 1. The defendant, Robert Jackson; 2. knowingly; 3. attempted to kill; 4. [the victim]." The court reversed noting that the instruction did not inform the jury of a necessary element of the crime, namely: that the defendant with intent to kill the victim, took a substantial step to accomplish that end. *Id.* at 854.

Underscoring the significance of informing the jury on the intent element in crimes of attempt, our supreme court has held: "By definition, there can be no 'attempt' to perform an act unless there is a simultaneous 'intent' to accomplish such act. Simply stated, in order to commit a crime, one must intend to commit that crime while taking a substantial step toward the commission of the crime." *Spradlin v. State* (1991), Ind., 569 N.E.2d 948, 951 (reversing a conviction for attempted murder because the instructions did not inform the jury that the state must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward the killing).

The rationale justifying reversal in the forgoing cases is no less compelling here. The instructions are essentially the same and the result reached should be the same as well. The law is clear that it is fundamental error to fail to instruct the jury on an essential element of the crime of attempted murder, namely, an intent to kill the victim. *Woodcox v. State* (1992), Ind., 591 N.E.2d 1019. However, whether the case involves attempted robbery or attempted murder there nonetheless "can be no 'attempt' to perform an act unless there is a simultaneous 'intent' to accomplish such act." *Spradlin,* 569 N.E.2d at 951. In this case the instructions do not impose upon the State the burden of proving an essential element of the crime, viz., an

intent to take property from another person or from the presence of another person. Accordingly, I would reverse Douglas's conviction and remand this cause for a new trial.

## II.

The majority's treatment of the trial court's instruction on the intoxication defense is even more troubling. Citing *Weyls v. State* (1992), Ind.App., 598 N.E.2d 610, *trans. denied,* the majority takes the position that there was an inadequate evidentiary basis in this case to justify giving an instruction on the intoxication defense. However, reliance on *Weyls* is misplaced. In that case the defendant complained that the trial court erroneously refused to give a tendered instruction on the defense of intoxication. Relying on well-established case authority, this court observed that when reviewing a trial court's refusal to give a tendered instruction, we consider 1) whether the instruction correctly states the law, 2) whether the evidence of record supports giving the instruction, and 3) whether the substance of the tendered instruction was covered by other instructions. *Weyls,* 598 N.E.2d at 615. We then held the evidence of record did not support giving Weyls's tendered instruction and thus the trial court did not err in refusing to give it.

Unlike *Weyls,* this case does not involve the trial court's *refusal* to give an instruction. Rather, it involves the trial court giving an instruction based on a statute that has since been ruled void and without effect. Further, in giving the erroneous instruction, the trial court itself acknowledged "[t]here was some evidence introduced during the trial indicating that the defendants may have been intoxicated at the time of the offense...." T.R. at 62. Obviously, there was evidence of record to support the giving of an intoxication defense instruction. Otherwise, the trial court would not have found it necessary to dispel the impact of such evidence. The majority's position that there was an inadequate evidentiary basis in this case to justify giving an instruction on the defense of intoxication not only second guesses the trial court on this point, but more importantly invades the province of the jury.

Because *Terry v. State* (1984), Ind., 465 N.E.2d 1085 has retroactive application, *see Pavey v. State* (1986), Ind., 498 N.E.2d 1195, the critical inquiry here is whether the giving of the erroneous instruction requires reversal. We must review this question in light of the fundamental error rule because Douglas did not tender his own instruction nor object to the trial court's erroneous one. A defendant waives the right on appeal to complain that the trial court's instructions are defective unless the defendant tendered correct instructions on the disputed issue. *Clemons v. State* (1981), Ind., 424 N.E.2d 113; *Kelly v. State* (1992), Ind.App., 586 N.E.2d 927, *trans. denied.* However, despite waiver we may review an issue on appeal where fundamental error is involved. In order to be fundamental, an error must be so prejudicial to the rights of the defendant that he could not have received a fair trial. *Howey v. State* (1990), Ind., 557 N.E.2d 1326. Fundamental error has also been characterized as error which constitutes a clear, blatant, violation of basic and elementary principles, and the resulting harm or potential for harm must be substantial. *Grey v. State* (1990), Ind., 553 N.E.2d 1196, *reh'g denied.*

The record here reveals that Douglas and his companions consumed nearly all of a one-half quart bottle of whiskey, ingested Valium and smoked marijuana before proceeding to the victim's home. The record also reveals that prior to the robbery Douglas was staggering and slurring his speech. Whether the fact that Douglas was able to walk to the victim's home, knock on the victim's door, fire two shots, hide the shotgun, and make his way back to his friend's house dispelled Douglas's claim of intoxication is a matter the jury should have been allowed to decide. However, the erroneous instruction given by the trial court removed Douglas's intoxication defense from the jury's consideration. In my view the error here was fundamental. It constituted a clear, blatant, violation of basic and elementary principles, and the resulting harm was substantial. When error in the giving of a particular instruction "misleads the jury as to the law of the case" then reversal is justified. *Walker v. State* (1986), Ind., 497 N.E.2d 543, 545. Thus, in addition to the reasons set forth in Section I above, I

would also reverse Douglas's conviction on these additional grounds and remand this cause for a new trial.